**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 7 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 99-4245

MICHAEL BRAD MAGLEBY,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D. Ct. No. 98-CR-565)**

Bel-Ami J. de Montreux, Montreux Freres, P.C., Salt Lake City, Utah, appearing for Defendant-Appellant.

Lisa J. Stark, Attorney (Jessica Dunsay Silver and Louis E. Peraertz, Attorneys, on the brief), United States Department of Justice, Civil Rights Division, Washington, DC, appearing for Plaintiff-Appellee.

Before **TACHA**, Chief Judge, **McKAY**, and **HENRY**, Circuit Judges.

**TACHA**, Chief Judge.

Defendant Michael Brad Magleby was convicted of four counts of an

indictment stemming from the burning of a cross on the property of an interracial

family. On appeal, Mr. Magleby argues that the evidence of his guilt regarding three of these four counts was insufficient to support his conviction. He also argues that the district court submitted two erroneous instructions to the jury. Finally, he argues that the district court erred by admitting evidence which he argues was highly prejudicial and of little or no probative value. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. Background

On the evening of September 6, 1996, the defendant, Michael Brad Magleby, hosted a barbecue at his home. His friends Andy Whitlock, Steve Meguerditchian, Justin Merriam, Mr. Merriam's date Liz Cannon, and fifteen-year-old L.M. were in attendance. During the course of the barbecue, Mr. Magleby and his guests drank heavily. In addition to drinking that evening, Mr. Magleby took prescription pain pills. On this occasion, as on other occasions, Mr. Magleby joined his friends in expressing prejudicial views of African-Americans. They told racist jokes, used racial slurs, and listened to racist CDs. The group accessed internet sites with racist jokes and other internet hate sites on Mr. Magleby's computer.

At some point during the evening, Mr. Magleby began talking about some Tongans, alleged gang members, who lived in his neighborhood. He later

testified that he did not like having the Tongans in his neighborhood. L.M. also testified that the Tongans had previously assaulted Mr. Magleby. During the course of this conversation, Mr. Magleby and L.M. began talking about burning a cross at the Tongans' house. Mr. Merriam taunted Mr. Magleby, telling him that he did not dare burn a cross there. Mr. Merriam told Mr. Magleby that if he were really going to do it, he should stop talking about it and just do it.

At about 1:00 AM, after several hours of drinking, Mr. Magleby and L.M. gathered wood from Mr. Magleby's garage to build a cross. In his kitchen, Mr. Magleby used a power drill to drill holes in the wood and fastened the pieces of wood together with screws. He then applied black spray-paint to make the cross more flammable. After the cross was ready, Mr. Magleby and L.M. carried it to Mr. Magleby's jeep and drove off with Mr. Magleby behind the wheel. They stopped at a gas station to fill a beer bottle with gasoline which they planned to pour over the cross to ensure that it would burn. They then set out for the Tongans' house.

When they arrived at the Tongans' house at about 2:30 AM, Mr. Magleby got out of his jeep and started taking the cross out. Before he took the cross out of the jeep, L.M. noticed several men outside. Because there were men outside the house, Mr. Magleby decided that "it wouldn't be too wise" to burn the cross at that house. Tr. at 800. He got back in the jeep.

At that point, Mr. Magleby told L.M. that they still had to the burn the cross because their friends would ridicule them if they did not. The parties dispute what happened next. Mr. Magleby argues that L.M. told him that he knew where a "crackhead" lived and that they could burn the cross at his house. The government argues that L.M. told him that he knew where a black man lived and that they could burn the cross there. The parties agree that Mr. Magleby knew nothing about the Henrys prior to that moment. Mr. Magleby and L.M. then drove to the house where Ron and Robyn Henry and their eleven-year-old son lived. The Henrys are an interracial family: Ron is African-American and Robyn is white.

When Mr. Magleby and L.M. arrived at the Henrys' home, Mr. Magleby took the cross out of the jeep, placed it in the Henrys' yard, poured gasoline on it, and then ignited it. The two immediately returned to Mr. Magleby's house.

After returning to Mr. Magleby's house, Mr. Magleby was excited and bragged to his friends about what he had done. Mr. Merriam became angry when he learned where Mr. Magleby and L.M. had burned the cross because the Henrys lived in his neighborhood and his father knew them. Mr. Magleby argues that it was at this point that he first discovered that Ron Henry was African-American.

Mr. Magleby was arrested and indicted on charges stemming from burning the cross at the Henrys' home. On December 10, 1999, Mr. Magleby was

convicted by a jury of conspiracy against rights in violation of 18 U.S.C. § 241, violation of civil rights and aiding and abetting in violation of 42 U.S.C. § 3631(a), using fire or an explosive in the commission of a felony in violation of 18 U.S.C. § 844(h)(1), and tampering with a witness in violation of 18 U.S.C. § 1512(b)(3).

## II. Discussion

Mr. Magleby argues that the district court submitted two erroneous instructions to the jury. He also argues that the district court erred in denying his motion for judgment of acquittal because the evidence was insufficient to support his convictions under 18 U.S.C. § 241, 18 U.S.C. § 844(h)(1), and 42 U.S.C. § 3631(a). Finally, he argues that the district court erred in admitting several pieces of evidence which, he argues, were highly prejudicial and of little or no probative value.

## A. Sufficiency of the Jury Instructions

Mr. Magleby argues that the district court erred in submitting two instructions to the jury. Because Mr. Magleby did not object to either instruction at trial, we review these instructions for plain error. United States v. Fabiano,

169 F.3d 1299, 1302-03 (10th Cir. 1999).[1] In reviewing jury instructions for error, we review the instructions "as a whole to determine whether the jury may have been misled, upholding the judgment in absence of substantial doubt that the jury was fairly guided." Id. at 1303 (internal quotation marks omitted).

### 1. Jury Instruction No. 30

Mr. Magleby argues that the district court erred in submitting Jury Instruction No. 30 to the jury because it misstates the relevant legal standard of 42 U.S.C. § 3631(a). "To establish a violation of 42 U.S.C. § 3631(a), the Government must prove beyond a reasonable doubt that the defendant acted with the specific intent to injure, intimidate or interfere with the victim[s] because of [their] race and because of the victim[s'] occupation of [their] home." United States v. Whitney, 229 F.3d 1296, 1303 (10th Cir. 2000) (internal quotation marks omitted).

Mr. Magleby concedes that Jury Instruction No. 27 correctly states the third element of a § 3631(a) violation: "[t]he defendant engaged in conduct described

---

[1]Mr. Magleby did not object to either Jury Instruction No. 30 or Jury Instruction No. 22. He asserts, however, that proposing an alternative to Jury Instruction No. 30 should be considered an objection to that instruction. This court has previously held, however, that proposing an alternate jury instruction is not an objection that "put the district court clearly on notice as to the asserted inadequacy of the jury instruction." Fabiano, 169 F.3d at 1303 (10th Cir. 1999) (internal quotation marks omitted). We therefore review both jury instructions for plain error.

because of the race or color of one or both Ron Henry or Robyn Henry <u>and</u>

<u>because one or both Ron Henry and Robyn Henry were attempting to occupy their</u>

<u>home free from racial discrimination</u>." (emphasis added). This instruction

further specifies that the government must prove each element "beyond a

reasonable doubt." He argues, however, that Jury Instruction No. 30 permits

conviction if a defendant is motivated by race alone. To support this argument,

he points to the following passage:

> The Government may satisfy its burden of proof by proving beyond a
> reasonable doubt that one or more of the victims' race was one of the
> reasons that the defendant acted. It does not matter that the
> defendant may have had more than one motive in performing the act
> as long as the defendant's race was one of his motives.
>
> In other words, if you find beyond a reasonable doubt that the
> defendant did the act charged . . . because of the race of the victim,
> the Government has satisfied its burden . . . .

We find Mr. Magleby's argument unpersuasive. In the first paragraph of

Jury Instruction No. 30, the district court instructed the jury regarding the third

element of the § 3631(a) charge:

> [I]f you find that an act by the defendant was for the purpose of
> intimidating or interfering with Robyn Henry because she was
> associating with an African-American or with Ron Henry because he
> is African-American <u>and because either was occupying a dwelling</u>,
> then this element of the offense would be proven.

(emphasis added). Additionally, the sentence preceding the passage quoted by

Mr. Magleby helps clarify that the following language refers only to the race

prong of § 3631(a). Taking the instruction in its entirety, it is sufficiently clear that Jury Instruction No. 30 states that two factors must be satisfied, and that the language cited by Mr. Magleby simply instructs the jury as to what it can consider with respect to one of these two factors. We conclude, therefore, that Jury Instruction No. 30 accurately describes the legal standard of § 3631(a). Furthermore, when combined with Jury Instruction No. 27 and looking at the jury instructions as a whole, it is clear that the jury was properly instructed that they must find beyond a reasonable doubt that Mr. Magleby targeted the Henry's both because of race and because they occupied a dwelling in order to convict him under § 3631(a). We find, therefore, that Jury Instruction No. 30 is not erroneous and did not mislead the jury.

## 2. Jury Instruction No. 22

Mr. Magleby also argues that the district court erred in submitting Jury Instruction No. 22 to the jury, instructing the jury that they may consider, among other factors,[2] "the reaction of the victims and other witnesses to the cross burning in determining the defendant's intent" under 18 U.S.C. § 241.

---

[2]This instruction also permitted the jury to consider as evidence of Mr. Magleby's intent "all the evidence in this case and the entire context in which the cross was burned," "the defendant's actions before, during and after the cross-burning," and "the location at which the cross was burned and its nearness to the intended victims."

Section 241 prohibits any person or persons from conspiring "to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States." In determining the existence of a threat in other contexts, this circuit has adopted an objective test, focusing on whether a reasonable person would find that a threat existed. United States v. Viefhaus, 168 F.3d 392, 396 (10th Cir. 1999). To determine whether this objective test is satisfied, this court has stated that a trier of fact may look to the reaction of the recipient of the alleged threat. United States v. Martin, 163 F.3d 1212, 1216 (10th Cir. 1998). The Supreme Court has also looked to the reaction of the recipients in determining whether a threat exists. Watts v. United States, 394 U.S. 705, 708 (1969). Additionally, other circuits that have adopted a similar reasonable foreseeability test have held that evidence of the recipient's response to the alleged threat is relevant to whether a threat was made. E.g., United States v. Fulmer, 108 F.3d 1486, 1500 (1st Cir. 1997) ("[E]vidence of the effect of the threat upon its listener is relevant to what a reasonable person in the position of the speaker should have foreseen."); United States v. Orozco-Santillan, 903 F.2d 1262, 1265 (9th Cir. 1990) ("Alleged threats should be considered in light of their entire factual context, including the surrounding events and reaction of the listeners."). Furthermore, other circuits that have adopted a "reasonable recipient test" have

also held that evidence of a recipient's response is relevant to whether a true threat exists.  E.g., United States v. Malik, 16 F.3d 45, 49 (2d Cir. 1994) ("In making this determination, proof of the effect of the alleged threat upon the addressee is highly relevant."); United States v. Roberts, 915 F.2d 889, 890-91 (4th Cir. 1990) (finding evidence of the reactions of recipients of an alleged threat relevant to whether a "reasonable recipient" would believe that a threat exists).

In the particular context of cross-burnings, the Seventh and Eighth Circuits have held that evidence of victims' reactions to a cross-burning is relevant to a defendant's intent under 18 U.S.C. § 241.  United States v. Hartbarger, 148 F.3d 777, 782-83 (7th Cir. 1998) (holding that victim reaction evidence is relevant under the reasonable foreseeability test); United States v. J.H.H., 22 F.3d 821, 827-28 (8th Cir. 1994) (holding that victim reaction evidence is relevant under the reasonable recipient test).  We agree with these circuits and hold that victims' reactions to a cross-burning may be considered by a trier of fact as relevant evidence of a defendant's intent under § 241.  Consequently, we find that the district court did not err in issuing Jury Instruction No. 22.

## B.  Sufficiency of the Evidence

Mr. Magleby argues that the district court erred by denying his motion for

judgment of acquittal because there was insufficient evidence to support his convictions under 18 U.S.C. § 241, 18 U.S.C. § 844(h)(1), and 42 U.S.C. § 3631(a). We review de novo both the sufficiency of the evidence and the denial of the motion for judgment of acquittal. United States v. Wood, 207 F.3d 1222, 1228 (10th Cir. 2000).

In reviewing his sufficiency of the evidence claims, we must ask "only whether taking the evidence – both direct and circumstantial, together with the reasonable inferences to be drawn therefrom – in the light most favorable to the government, a reasonable jury could find [Defendant] guilty beyond a reasonable doubt." United States v. Springfield, 196 F.3d 1180, 1184 (10th Cir. 1999) (internal quotation marks omitted). Mr. Magleby's hurdle in persuading this court to overturn the jury verdict is high. We will only overturn a jury verdict if "no reasonable juror could have reached the disputed verdict." United States v. Whitney, 229 F.3d 1296, 1300-01 (10th Cir. 2000) (internal quotation marks omitted). Furthermore, "the evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." Wood, 207 F.3d at 1228 (internal quotation marks omitted).

In a sufficiency challenge, we review the record as a whole and consider the collective inferences reasonably drawn therefrom. United States v. Jenkins,

175 F.3d 1208, 1215 (10th Cir. 1999).  Where conflicting evidence exists, we do not question the jury's conclusions regarding the credibility of witnesses or the relative weight of evidence.  Springfield, 196 F.3d at 1184.  "[W]hen a record allows for conflicting findings, we must presume that the trier of fact resolved any such conflicts in favor of the prosecution."  Wingfield v. Massie, 122 F.3d 1329, 1333 (10th Cir. 1997) (alterations and internal quotation marks omitted).

### 1.  Conviction under 42 U.S.C. § 3631(a)

"To establish a violation of 42 U.S.C. § 3631(a), the Government must prove beyond a reasonable doubt that the defendant acted with the specific intent to injure, intimidate or interfere with the victim[s] because of [their] race and because of the victim[s'] occupation of [their] home."  Whitney, 229 F.3d at 1303 (internal quotation marks omitted).[3]  Mr. Magleby argues that the district court improperly denied his motion for judgment of acquittal because the government

_____

[3]42 U.S.C. § 3631(a) imposes criminal penalties upon anyone who

"whether or not acting under color of law, by force or threat of force willfully injures, intimidates or interferes with, or attempts to injure, intimidate or interfere with (a) any person because of his race, color, religion, sex, handicap . . . , familial status . . . , or national origin and because he is or has been selling, purchasing, renting, financing, occupying, or contracting or negotiating for the sale, purchase, rental, financing or occupation of any dwelling."

presented insufficient evidence to prove either that he targeted the Henrys because of their race or that he acted because the Henrys occupied their home.

In making its determination regarding a defendant's intent, "a jury is permitted to draw inferences of subjective intent from a defendant's objective acts." Wingfield, 122 F.3d at 1333. The government may also prove intent through circumstantial evidence and surrounding circumstances. E.g., United States v. Prows, 118 F.3d 686, 692 (10th Cir. 1997) ("'[B]ecause intent involves the defendant's state of mind, and is difficult to prove directly, it is usually proven by circumstantial evidence.'" (quoting Kathleen Flavin & Kathleen Corrigan, Eleventh Survey of White Collar Crime: Mail Fraud and Wire Fraud, 33 Am. Crim. L. Rev. 861, 869 (1996))); United States v. Johnson, 971 F.2d 562, 566 (10th Cir. 1992) ("Direct evidence of a defendant's intent is seldom available. Intent can be proven, however, from surrounding circumstances."); United States v. Dysart, 705 F.2d 1247, 1257 & n.15 (10th Cir. 1983) (upholding jury instruction permitting jury to infer intent from circumstantial evidence). "Thus, even when a defendant, as here, denies having the requisite intent, a jury may disbelieve the defendant if [his] words and acts in the light of all the circumstances make [his] explanation seem improbable." Wingfield, 122 F.3d at 1333 (alterations and internal quotation marks omitted).

Viewing the record in its entirety together with the reasonable inferences to

be drawn therefrom in a light most favorable to the government, as we must, we find that the evidence was sufficient to permit a reasonable jury to find beyond a reasonable doubt that Mr. Magleby targeted the Henrys because of their race. The jury heard evidence that Mr. Magleby knew that burning crosses were symbols of racial hatred. Mr. Magleby admitted during cross-examination that he understood the "racial hatred nature" of a burning cross when used by the Ku Klux Klan. He also admitted that he understood that a burning cross, like a swastika, was a universal symbol of racial hatred. He admitted that he knew that the general public saw a burning cross as a symbol of racial hatred. Mr. Magleby's friends and associates testified that, prior to the cross-burning, Mr. Magleby had watched the movie *Mississippi Burning* – a movie that includes scenes of crosses being burned as symbols of hatred toward African-Americans.

Although Mr. Magleby testified that he could not remember whether L.M. had told him that the Henrys are an interracial family, claiming that he could remember being told only that the home was occupied by a "crackhead," he also testified that he first learned that Mr. Henry is African-American after returning to his house following the cross-burning. Likewise, L.M. testified that he first learned that Mr. Henry is African-American subsequent to the cross-burning. Evidence was presented at trial, however, that L.M. had signed a statement in which he told police that he had told Mr. Magleby that Mr. Henry is black prior to

the cross-burning.[4] Furthermore, Andy Whitlock testified that, after the cross-burning, both Mr. Magleby and L.M. appeared to know that Mr. Henry is African-American. Liz Cannon testified that, after Mr. Magleby and L.M. returned from burning the cross in the Henrys' yard, she "clearly recall[ed] them indicating the family was black" and that they discussed with their friends at the party that Mr. Henry is African-American. Tr. at 474-75. Moreover, contrary to Mr. Magleby's assertion that he felt remorse after learning that Mr. Henry is African-American, Ms. Cannon testified that Mr. Magleby appeared excited by what he had done and bragged about it. We do not question the jury's conclusions regarding the credibility of Mr. Magleby and L.M. and must presume that the jury resolved these conflicts in favor of the prosecution. See Springfield, 196 F.3d at 1184; Wingfield, 122 F.3d at 1333.

The jury also heard Mr. Henry's unrebutted testimony that he is the only African-American on his block. This evidence, combined with Mr. Magleby's

_____

[4]The government argues that L.M.'s signed statement that he told Mr. Magleby that Mr. Henry is African-American should be considered as evidence that Mr. Magleby targeted the Henrys because of race. That statement, however, was admitted as a prior inconsistent statement to impeach L.M.'s testimony pursuant to Fed. R. Evid. 613. The district court properly instructed the jury that the statement was admitted only to impeach L.M.'s credibility, not for the truth of the statement itself. Because the statement was not admitted for its truth, the jury could not properly consider it as evidence of Mr. Magleby's intent. Our review is limited to whether the jury reasonably could have found that Mr. Magleby targeted the Henrys because of race. We therefore do not consider this statement as evidence of Mr. Magleby's intent.

-15-

and L.M.'s testimony that they targeted a specific residence, was sufficient to permit the jury to reasonably infer that it was highly unlikely that Mr. Magleby burned a cross at a home occupied by an African-American merely by coincidence.

Viewing this evidence – combined with the background of racial slurs, racist jokes, racist music, and racist internet sites – in the light most favorable to the government, we conclude that a reasonable jury could find beyond a reasonable doubt that Mr. Magleby targeted the Henrys because of their race.

Mr. Magleby also argues that the evidence was insufficient to prove that he targeted the Henrys because they occupied their home. We disagree. Mr. Magleby's own testimony regarding his understanding of the meaning of a burning cross, combined with his testimony that he intentionally burned the cross in the Henrys' yard, provides sufficient evidence from which a jury could reasonably find beyond a reasonable doubt that Mr. Magleby also targeted the Henrys because they occupied their home. We therefore find that the district court properly denied Mr. Magleby's motion for judgment of acquittal on this count.

## 2. Conviction under 18 U.S.C. § 241 and 18 U.S.C. § 844(h)(1)

18 U.S.C. § 844(h)(1) makes illegal the use of fire to commit a felony. At

trial, Mr. Magleby did not deny igniting a cross in the Henrys' yard. Consequently, if the evidence is sufficient to sustain his conviction under 18 U.S.C. § 241, it is also sufficient to sustain his § 844(h)(1) conviction.

Section 241 is violated "[i]f two or more persons conspire to injure, oppress, threaten, or intimidate any person . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States." Section 241 requires that a "specific intent to interfere with the Federal right . . . be proved." United States v. Guest, 383 U.S. 745, 760 (1966). Mr. Magleby does not argue that the Henrys do not have a federally protected right to occupy their home. Rather, Mr. Magleby contends that the evidence was insufficient to prove beyond a reasonable doubt that he intended to "oppress, threaten, or intimidate" the Henrys in their enjoyment of that right. We disagree.

The record contains substantial evidence of Mr. Magleby's intent. Mr. Magleby testified that he decided to burn a cross to "rile people up." Tr. at 921. He acknowledged that he knew the public found cross-burning highly objectionable. He anticipated that the cross-burning would receive the attention of the news media. He admitted that he understood the message of racial hatred conveyed by a burning cross. Mr. Magleby further admitted that he intended to burn and did burn the cross in the Henrys' yard. Given this evidence of Mr. Magleby's understanding of the meaning of a burning cross to the general public

and the placement of the burning cross in the Henrys' yard, we conclude that the jury could reasonably infer that Mr. Magleby intended to oppress, threaten, and intimidate the Henrys in the free exercise of their federal right to occupy property.

Furthermore, the district court properly instructed the jury that they could consider the Henrys' reactions when deciding whether Mr. Magleby's actions were intended to be a threat. Robyn Henry testified that the cross-burning "terrified" her. Id. at 652. She testified that she discussed with her husband moving from their neighborhood. She testified that she was "scared, confused, anxious, [and] didn't sleep well at night." Id. at 652. She stopped sitting on their porch because she feared for her safety. The Henrys' eleven-year-old son testified that he was scared because he "didn't know if they were still going to try to hurt [him]." Id. at 659. He testified that he started carrying a baseball bat with him when he would walk in his neighborhood. He also testified that he started sleeping with this baseball bat under his bed at night "[i]n case somebody came in [his] house." Id. at 653. Ron Henry testified that the significance of the cross-burning to him was "move, leave, you're not welcome here, . . . you were in trouble somewhere and they wanted you to leave, leave the community." Id. at 680. He testified that he was "afraid for [himself] as well as the members of [his] family." Id. at 681. He also testified that he made several modifications to his home to improve security and protect his family. The jury was shown

photographs of these modifications. From this evidence, the jury could reasonably infer that a reasonable person would foresee a burning cross in another's yard being interpreted in a like manner.

Having viewed the above evidence in the light most favorable to the government, we find that there was sufficient evidence for a reasonable jury to find beyond a reasonable doubt that Mr. Magleby intended to oppress, threaten, and intimidate the Henrys in the free exercise of their federal right to occupy property. We therefore find that the district court properly denied Mr. Magleby's motion for judgment of acquittal on these counts.

## C. Evidentiary Challenges

Finally, Mr. Magleby argues that the district court erred in admitting several pieces of evidence. We review the district court's rulings on the admission of evidence for abuse of discretion, if an objection is timely made, and otherwise for plain error. United States v. Mills, 194 F.3d 1108, 1113 (10th Cir. 1999).

Under the abuse of discretion standard, we will not overturn the district court's decision unless we are firmly convinced that the district court "made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Moothart v. Bell, 21 F.3d 1499, 1504 (10th Cir. 1994). In

applying this standard, "we defer to the trial court's judgment because of its first-hand ability to view the witness or evidence and assess credibility and probative value." Id.

Under the plain error standard, Mr. Magleby must show "(1) an 'error,' (2) that is 'plain,' which means 'clear' or 'obvious' under current law, and (3) that 'affect[s] substantial rights.'" United States v. Fabiano, 169 F.3d 1299, 1303 (10th Cir. 1999) (quoting Johnson v. United States, 520 U.S. 461, 467 (1997)). Once these requirements are met, this court may "exercise discretion to correct the error if it 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" Fabiano, 169 F.3d at 1303 (quoting United States v. Olano, 507 U.S. 725, 732 (1993)).

In all of Mr. Magleby's evidentiary challenges, he argues that the district court admitted the evidence in violation of Rule 403 of the Federal Rules of Evidence. Rule 403 permits the district court to exclude evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury." The district court has "broad discretion to determine whether prejudice inherent in otherwise relevant evidence outweighs its probative value." United States v. Youts, 229 F.3d 1312, 1319 (10th Cir. 2000). Evidence is not unfairly prejudicial simply because it is detrimental to a party's case. United States v. Martinez, 938 F.2d 1078, 1082

(10th Cir. 1991). Evidence is unfairly prejudicial when it has "'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one.'" Stump v. Gates, 211 F.3d 527, 538 (10th Cir. 2000) (quoting Fed. R. Evid. 403 advisory committee's note).

### 1. The Henrys' Reactions

Mr. Magleby argues that the evidence of what he characterizes as "the Henrys' extended and delayed reactions" is irrelevant and highly prejudicial because it did not pertain to their reaction at the time of the incident. He also argues that the district court erred in admitting photographs of security measures taken by Mr. Henry. Additionally he argues that the district court erred in admitting a baseball bat and testimony that the Henrys' eleven-year-old son slept with it for protection following the cross-burning. Mr. Magleby objected only to the admission of the photographs and the baseball bat itself, so we review the admission of this evidence for abuse of discretion and the remainder for plain error. Mills, 194 F.3d at 1113.

As we discussed above, evidence of the victims' reactions to a cross-burning is probative of the defendant's intent under 18 U.S.C. § 241. The Henrys' reactions contained in the record begin immediately with their discovery of the burning cross in their yard and continue through the following days.

-21-

Because the threat communicated by the burning cross did not disappear once the cross was extinguished, the Henrys' reactions in the days following the cross-burning are relevant to their ongoing perception of that threat. We therefore find no plain error in the admission of the testimony regarding the Henrys' reactions.

The reactions of the Henrys include the security measures taken by Mr. Henry. The government offered eight photographs as illustrative aids to Mr. Henry's testimony regarding the security measures he had taken. Furthermore, the photographs are not cumulative. "Evidence is cumulative if repetitive, and if the small increment of probability it adds may not warrant the time spent in introducing it." United States v. Davis, 40 F.3d 1069, 1076 (10th Cir. 1994) (citations and internal quotations marks omitted). The district court reviewed the photographs and determined that each photograph shows a different security measure taken by Mr. Henry following the cross-burning. Because they aided the jury in understanding Mr. Henry's relevant testimony and are not cumulative, we find that the district court did not abuse its discretion in admitting the photographs into evidence.

The Henrys' biracial son was also a victim of the cross-burning. He lived at the home with his parents. His reactions, like those of his parents, are probative of Mr. Magleby's intent. His testimony that he carried and slept with a baseball bat for protection is certainly relevant to his reaction to the cross-

-22-

burning.  We find no plain error in the admission of this testimony.  Furthermore, the baseball bat itself is illustrative of that testimony.  We find, therefore, that the district court did not abuse its discretion in admitting the baseball bat into evidence.

## 2.  The Testimony of Dr. Gerlach

Mr. Magleby argues that the district court erred in allowing Dr. Larry Gerlach to testify as an expert on hate groups and the Ku Klux Klan.  Mr. Magleby did not object to this testimony at trial, so we review for plain error. Mills, 194 F.3d at 1113.

At trial, Dr. Gerlach testified that he is a history professor who specializes in the history of hate groups in America, particularly the Ku Klux Klan.  He testified that he had authored a book on the history of the Klan in Utah.  He testified briefly regarding the history of the Klan in both the United States and Utah, the symbols it used, and the groups it targeted.  Finally, he testified regarding the symbol of a burning cross as used by the Klan.

The admission of this testimony raises concerns similar to those faced by the Eighth Circuit in United States v. J.H.H., 22 F.3d 821 (8th Cir. 1994).  In J.H.H., a "skinhead" expert was permitted to testify in a cross-burning trial even though there was no evidence in the record that the defendant was a skinhead.  Id.

at 829. The Eighth Circuit expressed concern that the testimony implied that the defendant was, in fact, a skinhead and that it came close to permitting the factfinder to conclude that the defendant was guilty by association. Id.

We share these concerns and find the admission of this testimony troubling in a number of respects. First, the record contains no evidence that Mr. Magleby was a member of the Ku Klux Klan. Indeed, the record is completely devoid of any evidence indicating or suggesting that Mr. Magleby was a member or sympathizer of the Ku Klux Klan or any other hate group. At most, the evidence shows that Mr. Magleby harbored similar prejudicial attitudes toward African-Americans. This does not provide a sufficient foundation for Dr. Gerlach's testimony. Second, even if the government's testimony did establish an adequate foundation for Dr. Gerlach's testimony, the admission of his testimony, like the testimony in J.H.H., "comes dangerously close" to inviting the jury to find Mr. Magleby guilty by association. Id.

Notwithstanding its concerns regarding the expert testimony, the Eighth Circuit held that any error in its admission was harmless due to the ample evidence of the defendants' guilt. Id. at 829-30. In J.H.H., however, the Eighth Circuit reviewed the admission of evidence in a bench trial. Id. at 829. Consequently, the court reasoned that the prejudicial impact of inflammatory evidence was lessened. Id. In contrast, Mr. Magleby's trial was before a jury,

-24-

and the prejudicial impact of inflammatory evidence may therefore be heightened. See 1 McCormick on Evidence § 60, at 262-63 (John W. Strong ed., 5th ed. 1999). Nevertheless, we need not decide whether the admission of Dr. Gerlach's testimony was either an "error" or "plain" under our plain error analysis because we too find that any error was harmless. "A non-constitutional error, such as a decision whether to admit or exclude evidence, is considered harmless 'unless a substantial right of [a] party is affected.'" United States v. Charley, 189 F.3d 1251, 1270 (10th Cir. 1999) (quoting Fed. R. Evid. 103(a)). We have held that an error affects a substantial right when it has a "'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir.1990) (en banc) (quoting Kotteakos v. United States, 328 U.S. 750, 765 (1946)). We review "the record as a whole de novo to evaluate whether the error is harmless, examining the context, timing and use of the erroneously admitted evidence at trial and how it compares to properly admitted evidence." United States v. Hanzlicek, 187 F.3d 1228, 1237 (10th Cir. 1999). The burden of persuasion is on the defendant to show that the error "affected the outcome of the district court proceedings." Olano, 507 U.S. at 734 (1993).

We find that Dr. Gerlach's testimony did not affect the outcome of Mr. Magleby's trial. As discussed above, the record contains substantial evidence to

support Mr. Magleby's convictions. Moreover, Dr. Gerlach's testimony regarding the history of the Ku Klux Klan in America and in Utah was brief and was the only evidence regarding the Ku Klux Klan presented at trial. In addition, Dr. Gerlach's testimony regarding the symbolism of a burning cross was rendered harmless by Mr. Magleby's own admission on cross-examination that he understood the "racial hatred nature" of a cross burned by the Klan. Tr. at 980. Mr. Magleby also admitted that he understood that a burning cross, like a swastika, is a universal symbol of hatred.

Given the amount of evidence supporting Mr. Magleby's convictions, we are confident that the jury would have reached the same result even without Dr. Gerlach's testimony. We find, therefore, that any error in admitting Dr. Gerlach's testimony was harmless.

### 3. The Testimony Regarding James McBride

During the presentation of its case, the government introduced testimony regarding James McBride and his views. Because Mr. Magleby objected to the admission of this evidence at trial, we review for abuse of discretion. Mills, 194 F.3d at 1113.

Mr. McBride is allegedly a racist and member of a hate group. Mr. Magleby testified that he had only met Mr. McBride once and that he did not

know him and was not friends with him. One of Mr. Magleby's friends testified that they had conversations about Mr. McBride in Mr. Magleby's presence, but that they had not spoken to Mr. Magleby directly about Mr. McBride or his views [3:495-98]. Another of Mr. Magleby's friends testified that he had once taken Mr. McBride to a party at Mr. Magleby's where Mr. McBride "could have" given racist CDs, racist literature, and information regarding a hate group to Mr. Magleby, but that he did not know if Mr. McBride had in fact provided Mr. Magleby with such materials. Tr. at 316-17. Mr. Magleby argues that the district court erred in admitting this evidence because it was irrelevant and highly prejudicial. The government argues that this evidence was relevant because it was probative of Mr. Magleby's racial animus.

Because this testimony raises concerns similar to those raised by Dr. Gerlach's testimony, we find its admission troubling. There is no evidence in the record that Mr. Magleby even discussed Mr. McBride's views with him or anyone else, let alone that he shared them. There is also no evidence that Mr. Magleby belonged to or sympathized with the "Church of the Creator," the hate group to which Mr. McBride allegedly belonged. Moreover, there was no evidence that Mr. McBride attended Mr. Magleby's party on the night that Mr. Magleby burned the cross. It is difficult to see how the admitted testimony regarding Mr. McBride had any relevance to Mr. Magleby's intent on the evening he burned the cross.

Furthermore, Mr. McBride's testimony also comes dangerously close to inviting the jury to find Mr. Magleby guilty by association.

Notwithstanding our doubts regarding the relevance of this testimony, we need not decide whether the district court abused its discretion in admitting it because we find that it was harmless error. The admission of the testimony regarding Mr. McBride did not affect any of Mr. Magleby's substantial rights because we conclude it did not affect the outcome of the trial. See Rivera, 900 F.2d at 1469. As discussed in detail above, the record contains extensive evidence of Mr. Magleby's attitudes toward African-Americans. We are confident that the jury would have found that Mr. Magleby acted with racial animus even without the testimony regarding James McBride.

### 4. Song Lyrics

Mr. Magleby also argues that the district court erred in admitting song lyrics from racist CDs. He argues that there was no foundation for the song lyrics read during Mr. Magleby's testimony and that their probative value, if any, is substantially outweighed by their prejudicial effect. Because Mr. Magleby objected at trial to their admission, we review for abuse of discretion. Mills, 194 F.3d at 1113.

During its cross-examination of Mr. Magleby, the government was

permitted to read into evidence the lyrics from a song entitled "When the Boat Comes In" by the band Screwdriver. The message of the passage read into evidence is that the nation has been taken over by African-Americans, that it should be taken back, and that African-Americans should leave the country. The chorus to this song is "Nigger, nigger, get on that boat. Nigger, nigger, row. Nigger, nigger, get out of here. Nigger, nigger go, go, go." Tr. at 959.

We first address Mr. Magleby's argument that there was no foundation for the admission of the song lyrics. Mr. Magleby's friend Andy Whitlock testified that he heard Mr. Magleby play a CD by Screwdriver on a number of occasions. He testified that the message of one of Screwdriver's songs played by Mr. Magleby was "[j]ust get out, leave the country" and that it contained the word "nigger." Id. 394-95. Another of Mr. Magleby's friends, Justin Merriam, testified that, on the night of the cross-burning, Mr. Magleby was playing a CD by Screwdriver with lyrics "nigger get on your boat, nigger go." Id. at 331. Liz Cannon, who accompanied Mr. Merriam to Mr. Magleby's party on the evening of the cross-burning, testified that Mr. Magleby played a CD with lyrics like "nigga, nigga." Id. at 468. She also testified that Mr. Magleby knew and sang along with the lyrics to the racist CDs: "[Mr. Magleby] knew the lyrics on the CD's. . . . as good as you can know them, he knew the lyrics. He could sing them word-for-word." Id. at 468-69. All of this testimony preceded the introduction of the

Screwdriver lyrics during the cross-examination of Mr. Magleby. We find that this evidence provided a sufficient foundation to permit the district court to appropriately exercise its discretion in admitting the lyrics.

We now turn to Mr. Magleby's argument that the lyrics are irrelevant and unfairly prejudicial. Although the admission of the lyrics to the Screwdriver song was certainly harmful to Mr. Magleby's case, we conclude that its probative value outweighed its prejudicial effect. This evidence is probative both of Mr. Magleby's racial animus under 42 U.S.C. § 3631(a) and of his intent under 18 U.S.C. § 241.

In United States v. Viefhaus, 168 F.3d 392 (10th Cir. 1999), we held that the context in which an alleged threat is made is probative of whether a "true threat" exists. Id. at 398. In Viefhaus, the defendant was convicted of making threats against, inter alia, African-Americans, Jews, and federal law enforcement on an answering machine "hotline." The defendant asserted as a defense that he lacked the intent requisite to make a true threat. We upheld the admission of racially inflammatory items as relevant to the defendant's intent.

> [T]he need to demonstrate the context in which Viefhaus uttered his remarks rendered much of the evidence of Viefhaus' racial hostility intrinsic to the crime charged in the indictment. . . .
>
> . . . .
>
> . . . The only way a jury could properly assess the sincerity of Viefhaus' beliefs, as well as the likely effect Viefhaus' message

-30-

would have on an objective listener, was to examine the circumstances in which the comments were made."

Id.

As did the defendant in Viefhaus, Mr. Magleby denies having the requisite intent under 42 U.S.C. § 3631(a) and 18 U.S.C. § 241. The lyrics to the Screwdriver song, as well as the evidence that Mr. Magleby knew the lyrics and could sing along with them, are probative of his intent under these sections. First, § 3631(a) requires that the government prove beyond a reasonable doubt that Mr. Magleby targeted the Henrys because of their race. The lyrics and Mr. Magleby's familiarity with them are probative of his racial animus in burning the cross. Second, under § 241, the government must prove beyond a reasonable doubt that Mr. Magleby had the specific intent to "oppress, threaten or intimidate" the Henrys in the enjoyment of their federally protected right to occupy property. Context is important in determining whether a true threat has been made. Viefhaus, 168 F.3d at 397. The necessity of demonstrating the context in which the cross was burned renders the Screwdriver lyrics and other evidence of hostility toward the presence of African-Americans in this country intrinsic to a violation of § 241. And, as in Viefhaus, the only way the jury could properly determine the message conveyed by Mr. Magleby's cross-burning and the foreseeable effect it would have on the Henrys was to examine the circumstances in which the cross-burning was conceived, planned, and executed. We find that

-31-

the district court did not abuse its discretion in admitting the song lyrics into evidence.

### 5. Testimony that Mr. Magleby Provided Alcohol and Pornography to Minors

Finally, Mr. Magleby argues that the district court erred in admitting testimony that Mr. Magleby provided alcohol and pornography to a minor. During its cross-examination of Mr. Magleby, the government inquired into whether he allowed L.M. to look at pornography while at his home and whether he provided L.M. with alcohol. The government argues that this evidence is relevant as illustrative of the relationship between Mr. Magleby and his co-conspirator. The government also argues that this testimony permitted the jury to assess Mr. Magleby's credibility. Because Mr. Magleby did not object to this evidence at trial, we review for plain error. <u>Mills</u>, 194 F.3d at 1113.

Viewing the record as a whole and taking this evidence in context, we conclude that the jury would have reached the same verdict even without the testimony about Mr. Magleby providing alcohol and pornography to minors. The cross-examination on this subject was brief. Additionally, Mr. Magleby denied that he gave L.M. alcohol or permitted him to look at pornography. There was sufficient evidence for the jury to find Mr. Magleby guilty beyond a reasonable

doubt.  We find, therefore, that the admission of this testimony was not plain error.

### III.  Conclusion

We find that neither challenged jury instruction constituted plain error.  We also find that the government presented sufficient evidence to permit the jury to find beyond a reasonable doubt that Mr. Magleby violated 42 U.S.C. § 3631(a), 18 U.S.C. § 241, and 18 U.S.C. § 844(h)(1). Furthermore, we find that the district court did not commit reversible error in admitting any of the evidence challenged by Mr. Magleby.

Accordingly, we AFFIRM.