**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 7 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 02-5206

TIMOTHY JOHN VAUGHN, also
known as Booty Green, also known as
Tone, also known as Terry White,

Defendant - Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D. Ct. No. 00-CR-126-C)**

---

Richard D. White, Jr., Barber & Bartz, P.C., Tulsa, Oklahoma, appearing for
Appellant.

Kevin C. Danielson, Assistant United States Attorney (David E. O'Meilia, United
States Attorney, with him on the brief), Office of the United States Attorney,
Tulsa, Oklahoma, appearing for Appellee.

---

Before **TACHA**, Chief Circuit Judge, **EBEL** and **HARTZ**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

---

A jury found Defendant-Appellant Timothy John Vaughn guilty of

numerous counts of conspiring to possess and distribute narcotics. On appeal, he contends that the District Court erred: (1) in limiting his cross-examination of two government witnesses, (2) in limiting his introduction of evidence regarding a previous criminal investigation, and (3) in ruling the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, inapplicable to the government's filing of an information seeking to enhance Mr. Vaughn's sentence due to prior convictions. Mr. Vaughn filed timely notice of appeal. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

This appeal represents the culmination of the government's investigation and prosecution of an extensive drug conspiracy. The government presented evidence at trial showing that the central player in the conspiracy was Darrell Bellamy of Phoenix, Arizona. From Phoenix, Mr. Bellamy coordinated shipments of powder cocaine, crack cocaine, and marijuana to various cities, including Tulsa, Oklahoma; Wichita, Kansas; and Detroit, Michigan. The government contends that Mr. Vaughn was a member of this conspiracy.

On July 13, 2001, a federal grand jury indicted Mr. Vaughn for conspiring to possess and distribute cocaine, crack cocaine, and marijuana in violation of 18 U.S.C. § 846. After a twenty-three-day trial involving over fifty witnesses, many of whom testified to Mr. Vaughn's involvement in the conspiracy, a jury

convicted Mr. Vaughn. On December 9, 2002, the District Court sentenced him to life in prison to be followed by ten years' supervised release and imposed $5100 in fines and assessments.

Mr. Vaughn raises three issues on appeal. He first argues that the District Court erred in limiting his cross-examination of two government witnesses, Robert Robertson and Jennifer Natale. He next asserts that the District Court erred in limiting the information the jury received regarding a traffic stop in West Memphis, Arkansas. Finally, he contends that the District Court erred in concluding that the seventy-day time limit of the Speedy Trial Act does not apply to an information filed pursuant to 28 U.S.C. § 851(a)(1). We address these arguments below.

## II. STANDARD OF REVIEW

We review Mr. Vaughn's evidentiary claims for an abuse of discretion, and if we find an abuse of discretion, we must determine whether the error was harmless. *United States v. Begay*, 144 F.3d 1336, 1339 (10th Cir. 1998). The government bears the burden to show that a nonconstitutional error is harmless by a preponderance of the evidence. *United States v. Wittgenstein*, 163 F.3d 1164, 1169 (10th Cir. 1998). An error "is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." *United States v. Cestnik*, 36 F.3d 904, 910 (10th Cir. 1994). Finally, we

review the District Court's interpretation of Speedy Trial Act statute de novo.

*United States v. Alahmad*, 211 F.3d 538, 541 (10th Cir. 2000).

### III. DISCUSSION

A.  <u>Limitation of Cross-Examination</u>

1.  *Cross-Examination of Robert Robertson*

Mr. Vaughn argues that the District Court improperly limited his examination of Mr. Robertson, who is Mr. Bellamy's uncle and a self-admitted courier for the alleged drug conspiracy. After failing to raise the issue on direct or cross-examination, a codefendant's attorney asked Mr. Robertson on re-cross examination if he had "entered [into] any kind of agreement with the Government." Mr. Robertson answered "no." Mr. Vaughn's counsel then sought to ask whether Mr. Robertson "ha[d] an agreement, an understanding as to whether he will be charged." The District Court denied the request, finding the inquiry unnecessarily cumulative.

Mr. Vaughn contends that this ruling is erroneous because, even though "[Mr.] Robertson had already been asked about an 'agreement' with the Government, . . . . [a]n 'agreement' and an 'understanding' are not identical." Thus, he urges that his proffered inquiry as to whether there was "understanding" was not cumulative. He further claims that the issue of whether there was an understanding "would bear on [Mr. Robertson's] motive to testify against Mr.

Vaughn."

We doubt that there is a meaningful distinction between the terms "agreement" and "understanding" as used in this context.[1] Indeed, by himself using the terms "agreement" and "understanding" interchangeably, Mr. Vaughn's counsel's own statements indicate that the District Court could reasonably construe the requested question as cumulative. More importantly, we have long held that "in the last analysis the trial court is the governor of the trial with the duty to assure its proper conduct and the limits of cross-examination necessarily lie within its discretion." *United States v. Hinkle*, 37 F.3d 576, 579 (10th Cir. 1994) (quotations omitted); *see also Delaware v. Van Ardsall*, 475 U.S. 673, 679 (1986) (noting that district courts have "wide latitude" in limiting cross examination). Given this wide latitude, even if there is a slight difference between the "agreement" question and the proffered "understanding" question, we cannot say the District Court abused its discretion by denying the questioning as cumulative.

2.    *Cross-Examination of Jennifer Natale*

---

[1]*Webster's* defines "agreement" as "an arrangement (as between two or more parties) as to a course of action; . . . [or as] a contract duly executed and legally binding on the parties[.]" *Webster's Third International Dictionary Unabridged* 43 (1981). It defines understanding as "an agreement of opinion or feeling; . . . [or] a mutual agreement not formally entered into but in some degree binding on each side." *Id*. at 2490.

Mr. Vaughn also argues that the District Court erred in limiting his ability to impeach thoroughly the testimony of Ms. Natale—one of the conspiracy's principle drug couriers turned government witness. At trial, Mr. Vaughn's attorney sought to impeach Ms. Natale's credibility by showing that she did not mention Mr. Vaughn in her earliest statements to investigators and that only her final statements matched her trial testimony concerning Mr. Vaughn's involvement in the conspiracy. To this end, his attorney attempted to use reports drafted by FBI agents (the "FBI Reports") following their interviews with Ms. Natale to show what he terms as her "ever-expanding recollection."

The District Court denied Mr. Vaughn's attempts to use these reports because he found that (1) any alleged omissions in the FBI Reports were not "inconsistencies" and (2) Ms. Natale had not adopted the reports as accurately reflecting her statements to FBI officers. In response to this ruling, Mr. Vaughn requested that the District Court allow him to subpoena various law enforcement officers, including FBI Officer Melvin Cervantes, to investigate further the alleged inconsistencies. After allowing Mr. Vaughn and the government to question Officer Cervantes telephonically to determine the content of his testimony, the District Court denied the subpoena request, finding again that Officer Cervantes would not testify to inconsistencies but only to understandable omissions on the part of Ms. Natale.

On appeal, Mr. Vaughn attacks on three grounds the District Court's decision to prohibit him from using the text of the FBI Reports to impeach Ms. Natale. First, he argues that, even if he could not use the report as substantive evidence, "it was properly useable for impeachment." Second, he notes that "an omission may be an inconsistent statement" if the witness would have naturally mentioned the omitted information. Third, as to the denied subpoena, Mr. Vaughn argues that the District Court erred in finding that Officer Cervantes's testimony did not establish an inconsistency between Ms. Natale's statements at her interview and her testimony at trial.

Here, we need not decide whether the District Court erred in limiting the examination of Ms. Natale or in refusing to issue the Cervantes subpoena[2]

---

[2]Although we need not address Mr. Vaughn's substantive claims, we note that it is unclear whether the District Court concluded that an omission could qualify as an inconsistent statement under Fed. R. Evid. 613. At times, the District Court seems to indicate that an omission can never be an inconsistency, *see* R. at Vol. XX, p. 1078 ("No statement at all cannot be inconsistent. . . . If I have never told you anything and I make a statement, can I have an inconsistent statement from what I just told you?"), whereas at others the District Court seems to indicate only that the alleged inconsistencies were not truly inconsistent given the surrounding circumstances, *see id.* at 1076 ("Did it say over what period of time? . . . . Does [the agreement] say she's got to have said everything in the second interview? . . . . You and I know that that means as much as she can remember at the time she's talking to them."). *But see* R. at Vol. XXVII, p. 1993 ("I'll say this one more time. What somebody does not say is not an inconsistent statement with what they say. There are times when silence could be a statement. . . . But normally it is not."). Regardless, we find it clear that, in some circumstances, an omission may rise to the level of an inconsistency. *See, e.g.,*

(continued...)

because, after fully reviewing the record, we conclude that, even if the District Court committed error, these rulings did not substantially influence the outcome of the trial. *See United States v. Magleby*, 241 F.3d 1306, 1318 (10th Cir. 2001) ("Notwithstanding our doubts regarding the relevance of this testimony, we need not decide whether the district court abused its discretion in admitting it because we find that it was harmless error.").

We reach this conclusion for two reasons. First, the District Court allowed Mr. Vaughn's counsel to question Ms. Natale at length regarding her statements at various law-enforcement interviews. *See, e.g.*, R. at Vol. XX, p. 1074 ("Now, in this two days of interviews in Arizona in which you said you would tell them everything that you know, you did talk about going to Detroit, didn't you?"); *id.* at 1082 ("Isn't it true, ma'am, that in neither your interview with the agents on October 31st or November 1st, did you ever tell them that you traveled to Detroit with Timothy Vaughn?"); *id.* at 1083 ("Now in your interviews of October 31st,

---

[2](...continued)
*Dennis v. United States*, 346 F.2d 10, 17-18 (10th Cir. 1965) ("In determining variances or inconsistencies we should remember that flat contradictions are not the only test for inconsistency. Omissions of fact . . . may be relevant to the process of testing credibility of a witness' trial testimony."), *rev'd on other grounds*, 384 U.S. 855 (1966); *see also United States v. Strother*, 49 F.3d 869, 874 (2d Cir. 1995) ("Under certain circumstances, a witness's prior silence regarding critical facts may constitute a prior inconsistent statement where failure to mention those matters . . . conflict[s] with that which is later recalled.") (internal quotations omitted) .

November 1st and November 28th, isn't it true that at no time did you ever tell any of the agents or attorneys that you delivered any cocaine to Timothy Vaughn in Wichita"); *id.* at 1086 ("And did you tell [federal agents and the United States Attorney] that one of those persons was Timothy Vaughn?").  He merely prevented Mr. Vaughn's counsel from quoting directly from the FBI Records.  *Id.* at 1075 ("You can ask her what she said, but don't refer to the report.").  After reviewing the record, we conclude that Mr. Vaughn would have received no distinct benefit from using the exact text of the report to impeach Ms. Natale.

Second, even if Mr. Vaughn would have benefitted substantially from using the exact text of the reports, we find that the ruling did not substantially affect the outcome of the trial because several other witnesses testified to Mr. Vaughn's involvement in the conspiracy.  For example, Nicole Farnum testified that Mr. Vaughn was present while large quantities of marijuana were being packed at Mr. Bellamy's house.  Alicia Hardwick testified that Mr. Vaughn accompanied her on multiple flights to smuggle cocaine to Detroit and often helped her transport money on their return trips.  Richard Taylor testified that Mr. Bellamy told him that Mr. Vaughn made drug runs for him to Detroit, and Robert Robertson testified that Mr. Vaughn had made multiple drug runs to Detroit.  In light of this evidence, we cannot find that any possible error in limiting the cross-examination of Ms. Natale substantially affected the outcome of Mr. Vaughn's trial.

B.    West Memphis Traffic Stop

Mr. Vaughn next argues that the District Court erred in refusing to allow him to admit evidence relating to a traffic stop in West Memphis, Arkansas. At this stop, officers found 120 pounds of marijuana in a car accompanying Mr. Vaughn. When the government attempted to introduce the testimony of a bail bondsman to show that Arkansas police officers had arrested Mr. Vaughn in connection with the stop, Mr. Vaughn's attorney sought to introduce evidence to show that the officers dropped all charges against Mr. Vaughn relating to the stop. The District Court denied the request, although the exact basis of the denial is not clear from the record.

As with Mr. Vaughn's earlier claims, even if we found that the District Court erred by refusing to allow the evidence, we cannot find that the error substantially affected the outcome of the trial. *See Magleby*, 241 F.3d at 1318. In light of the extensive evidence supporting a finding of guilt in this case, *see supra* at 9-10, we cannot find that the ruling substantially affected the outcome of the trial.

C.    The Speedy Trial Act

Mr. Vaughn next argues that the District Court erred in concluding that the Speedy Trial Act does not apply to an information filed pursuant to 21 U.S.C. §

851(a)(1).[3]  On April 30, 2002, the government filed an information pursuant to §

851(a)(1) notifying Mr. Vaughn of its intent to use his prior felony convictions to

enhance any sentence resulting from the current prosecution.  On July 23, 2002,

Mr. Vaughn filed a motion to dismiss the § 851(a)(1) information, claiming that

the Speedy Trial Act required the government to commence trial against him on

the § 851(a)(1) information within seventy days of its filing.

The Speedy Trial Act, in relevant part, provides:

In any case in which a plea of not guilty is entered, the trial of
a defendant charged in an information or indictment with the
commission of an offense shall commence within seventy days
from the filing date (and making public) of the information or
indictment, or from the date the defendant has appeared before
a judicial officer of the court in which such charge is pending,
whichever date last occurs.  18 U.S.C. § 3161(c)(1).

If a defendant is not brought to trial within the time limit required by
section 3161(c) as extended by section 3161(h), the information or
indictment shall be dismissed on motion of the defendant.  18 U.S.C.
§ 3162(a)(2).

In an order dated August 19, 2002, the District Court denied his motion,

---

[3]In relevant part 21U.S.C. § 851(a)(1) reads:

No person who stands convicted of an offense under this part shall be
sentenced to increased punishment by reason of one or more prior
convictions, unless before trial, or before entry of a plea of guilty,
the United States attorney files an information with the court (and
serves a copy of such information on the person or counsel for the
person) stating in writing the previous convictions to be relied upon.
21 U.S.C. § 851(a)(1).

finding that the "plain language" of the "Speedy Trial Act only applies to informations and indictments which charge 'the commission of an offense.'" After concluding that informations filed pursuant to § 851(a)(1) do not charge the commission of an offense but merely notify the defendant of the government's intention to use a prior offense to enhance his sentence, the District Court found that the Speedy Trial Act does not apply to such informations.

We fully agree with the District Court's well reasoned opinion on this score. As such, for substantially the same reasons given by the District Court, we hold that the seventy-day requirement of the Speedy Trial Act does not apply to informations filed under 21 U.S.C. § 851(a)(1).

## IV. CONCLUSION

For the reasons stated above, we AFFIRM both the District Court's evidentiary rulings and its interpretation of the Speedy Trial Act.