**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 16, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

TOMMY PENA,

Defendant - Appellant.

No. 11-2243
(D.C. No. 2:10-CR-02138-WJ-2)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, **HOLMES**, and **MATHESON**, Circuit Judges.

Tommy Pena[1] appeals from his convictions, entered after a bench trial, of

carjacking, use of a firearm during a crime of violence, and conspiracy to commit

carjacking.[2] He contends the evidence was insufficient to find him guilty of carjacking

---

[*] This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

[1] Pena was named in the indictment as Peña, but we spell his name as shown in his filings before this court.

[2] He was also convicted on other charges not pertinent to this appeal.

because the prosecution failed to prove he intended to kill or inflict serious injury if the possessors refused to relinquish the vehicle or offered resistance. He also contends the evidence was insufficient to find him guilty of conspiracy to commit carjacking; he argues the prosecution failed to show an agreement to kill or inflict serious injury. We affirm.

## BACKGROUND

Methamphetamine dealer Isabel Saucedo initiated the carjacking at issue after she determined her former friend Arthur Lacey had stolen some of her cash.[3] Saucedo hired Pena and his friend Jeremy Conde to recover either the cash or a Cadillac she suspected Arthur Lacey had purchased with the cash. On the evening of April 6, 2010, Pena and Conde, armed with loaded handguns, proceeded to the home of Lacey and his wife, Collette Lacey. They knocked on the home's side door, and, when Arthur answered the door, Pena pointed his handgun at Arthur's face. With both intruders' handguns pointed at him, Arthur retreated into his home. As the intruders entered, he fled outside and contacted the police.

While Pena and Conde ransacked the Lacey home, Collette Lacey began following Pena around the house "asking . . . why he was doing this to her family." (R. Vol. I at 104.) As the ransacking proceeded, the Laceys' nine-year-old daughter woke up and approached Collette. At that time, Conde had been pointing his gun at Collette, but, to the child's terror, he then pointed his gun at the child. Conde demanded Collette's purse

---

[3] As Pena does not contest the district judge's factual findings, we draw almost exclusively on them for our recitation of the factual background.

and Pena took a laptop.  Collette refused to hand the purse over.  Pena eventually put his gun in his pocket and, addressing Conde, said "Jeremy, let's go." (R. Vol. III at 31, 45.) As Pena was leaving, however, he saw the keys to the Cadillac.  Pena took the keys and left the Laceys' home.  At that time, Collette was standing near him and Pena's handgun was in his pocket.  Pena then departed in the Cadillac.  Conde left with Saucedo, who had remained outside.

## DISCUSSION

As Pena correctly points out, "carjacking requires proof of [the] intent to kill or inflict serious bodily injury if the possessor of the vehicle refuses to relinquish [it] or offers resistance to the attempt to steal the vehicle."[4]  (Appellant Br. at 11.)  He also correctly tells us the prosecution was required to show he possessed the requisite intent "at the precise moment he took the keys to the Cadillac."[5]  (Appellant Br. at 17.)  He says the prosecution failed to produce any evidence about his intent at that moment.  On the contrary, he says, the evidence shows he "abandoned" any intent to kill or seriously harm the Laceys by the time he took control of the car.  He points particularly to three facts: (1) saying to Conde, "Jeremy, let's go"; (2) placing his handgun in his pocket before

---

[4] "[T]o be convicted of carjacking under 18 U.S.C. § 2119, a defendant must take a motor vehicle by force or intimidation with 'the intent to cause death or serious bodily harm.'" *United States v. Vallejos*, 421 F.3d 1119, 1123 (10th Cir. 2005).

[5] The intent requirement in 18 U.S.C. § 2119 "'is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary to steal the car.'" *Vallejos,* 421 F.3d at 1123 (quoting *Holloway v. United States*, 526 U.S. 1, 3 (1999)).

taking the keys to the Cadillac; and (3) making no verbal demand for the Cadillac's keys. In his view, these facts demonstrate he was ready to depart the Laceys' home without seriously harming them.

In contrast, the district judge concluded the "totality of the circumstances" strongly suggested Pena possessed the necessary intent: "Pena had the intent to seriously harm or kill Collette or Arthur Lacey if necessary to steal their car. Again, this may be inferred from the presence of firearms, the ransacking of the Laceys' home, and Pena's nonverbal threat to shoot Arthur Lacey." (R. Vol. I at 109.)

The critical problem with Pena's argument is that he is asking us to conclude the judge was required to credit the facts favorable to him because they were more closely contemporaneous with Pena's finding and taking of the keys to the Cadillac.[6] While our precedents require us to focus on Pena's intent at the moment he took the Cadillac's keys, they also require the factfinder to determine whether Pena possesses this intent "by considering the '*totality of the circumstances*.'" *United States v. Vallejos*, 421 F.3d 1119, 1123 (10th Cir. 2005) (quoting *United States v. Malone*, 222 F.3d 1286, 1291 (10th Cir. 2000) (emphasis added)). The judge *could* have found the most contemporaneous facts more probative indicators of Pena's intent than the contrary evidence. The judge could even have concluded, as Pena urges, these facts showed Pena had changed his mind and abandoned any intent to harm or kill the Laceys if they resisted the taking of the

---

[6] In an appeal from a bench trial, just as in an appeal from a jury trial, we review the sufficiency of the evidence de novo. *United States v. King*, 632 F.3d 646, 650 (10th Cir. 2011); *United States v. Moore*, 198 F.3d 793, 796 (10th Cir. 1999).

Cadillac.[7]  But the judge could have, just as reasonably, viewed the entire episode as sufficiently contemporaneous with the taking of the keys to the Cadillac to be probative of Pena's intent at the critical moment.

The judge here employed the last of these approaches.  This required him to resolve the conflict in the evidence.  In doing so, he was *required* to consider *all* of the pertinent evidence.  *Vallejos*, 421 F.3d at 1123.  If the facts lead to more than one reasonable inference, we do not second-guess his resolution of the conflict.  *United States v. Magleby*, 241 F.3d 1306, 1312 (10th Cir. 2001) ("Where conflicting evidence exists, we do not question the [factfinder's] conclusions regarding the . . . relative weight of evidence."); *see United States v. Moore*, 198 F.3d 793, 795 (10th Cir. 1999) (when reviewing a claim of insufficiency of the evidence, we "ask whether 'any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.'").  Here, the undisputed facts demonstrate the rationality of the judge's conclusion.  The presence of the loaded guns, Pena's threat to shoot Arthur, and his other aggressive

---

[7] We are not surprised the judge did not take this approach.  The facts Pena cites do not conclusively show he had changed his mind.  For instance, even though Pena pocketed his handgun, he could have easily pulled the gun out of his pocket if the Laceys offered him any resistance.  Likewise, his statement "Jeremy, let's go," was hardly an unequivocal announcement of abandonment.  It seems just as likely that Pena's statement was merely the product of his inability to find the Cadillac's keys.  His apparent unwillingness to kill or inflict serious bodily injury on Collette because she refused to produce the keys does not inform the debate about his intent to use such force if she had resisted the actual taking of the car, which she quite prudently did not do.  The judge's implicit rejection of Pena's abandonment argument was a reasonable exercise of his duty, as factfinder, to draw reasonable inference from the evidence.

- 5 -

behavior powerfully suggested his willingness to seriously hurt the Laceys if necessary to take the Cadillac.

Admittedly, because the Laceys offered Pena no resistance when he took the keys to the Cadillac, we cannot know to a certainty what Pena would have done had he encountered resistance. Even so, binding precedent leaves no doubt of the necessity for the factfinder to consider all of the evidence to infer whether Pena had the required intent to meet resistance with violence. *See Vallejos*, 421 F.3d at 1123. Indeed, under other circumstances, we have found the mere presence of guns sufficient to allow the factfinder to infer this intent. *See id.* at 1124. The evidence of the necessary intent here was far more extensive, as we have noted. Pena's claim of insufficient evidence on the charge of carjacking lacks merit.[8]

In Pena's view the evidence was also insufficient to prove conspiracy to commit carjacking because "a conspiracy to commit carjacking must include an agreement to kill or inflict serious bodily injury should the possessor of the vehicle refuse to relinquish control." (Appellant Br. at 19.) He suggests the prosecution failed to show the loaded firearms were "anything other than 'an empty threat, or intimidating bluff.'" (*Id.* at 20 (quoting *Holloway*, 526 U.S. at 11).) He is wrong. As both Pena and Conde entered the Laceys' home with loaded firearms and the common intent to recover Saucedo's Cadillac or cash, there was sufficient basis for the judge to infer the necessary agreement. *See Vallejos*, 421 F.3d at 1124. The intruders further demonstrated their agreement to kill or

---

[8] Because of our resolution of this issue, we also affirm Pena's conviction for using a firearm during a violent felony.

seriously harm the Laceys when, during the course of the invasion, Pena pointed his firearm at Arthur, and Conde pointed his firearm at both Collette and her daughter. The evidence amply supports Pena's conspiracy conviction.

AFFIRMED.

**Entered by the Court:**


**Terrence L. O'Brien**
United States Circuit Judge