**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Stephen Ramont HARDRIDGE,
Defendant–Appellant.**

No. 02–5208.

United States Court of Appeals,
Tenth Circuit.

June 7, 2004.

David E. O'Meilia, U.S. Attorney, Philip E. Pinnell, Asst. U.S. Attorney, Kevin C. Danielson, Catherine J. Depew, Douglas Adam Horn, Chad Adrian Greer, Office of the United States Attorney, Tulsa, OK, for Plaintiff–Appellee.

Art Fleak, Tulsa, OK, for Defendant–Appellant.

Before TACHA, Chief Circuit Judge, EBEL and HARTZ, Circuit Judges.

## ORDER AND JUDGMENT[*]

TACHA, Chief Circuit Judge.

A jury found Defendant–Appellant Stephen Ramont Hardridge guilty of numerous counts of conspiring to possess and distribute narcotics. On appeal, he alleges use of defective verdict forms, four errors in sentencing, improper admission of evidence, improper attorney disqualification, and a violation of the Speedy Trial Act, 18 U.S.C. § 3161 et seq. We AFFIRM, taking jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. §§ 3742(a)(1) and (a)(2).

## I. BACKGROUND

This appeal represents the culmination of the government's investigation and prosecution of an extensive drug conspiracy. The government presented evidence at trial showing that the central player in the conspiracy was Darrell Bellamy of Phoenix, Arizona. From Phoenix, Mr. Bellamy coordinated shipments of powder cocaine, crack cocaine, and marijuana to various cities, including Tulsa, Oklahoma; Wichita, Kansas; and Detroit, Michigan. The government asserts that Mr. Hardridge was a member of this conspiracy.

A federal grand jury indicted Mr. Hardridge for conspiring to possess and distribute cocaine, crack cocaine, and marijuana in violation of 18 U.S.C. § 846.

After a twenty-three-day trial involving over fifty witnesses, a jury convicted Mr. Hardridge on all counts. The District Court sentenced him to 292 months' imprisonment to be followed by ten years' supervised release and imposed $10,100 in fines and assessments. Mr. Hardridge filed a timely notice of appeal, raising eight issues. We address each argument in turn below.

## II. DISCUSSION

### A. Verdict Forms

#### 1. Standard of Review

■ Mr. Hardridge first argues that the District Court erred in using verdict forms that did not require the jury to find him guilty of participating in the conspiracy before it decided his guilt as to the objects of the conspiracy.[1] We review verdict forms under the same "abuse of discretion standard we apply to jury instructions." *United States v. Jackson*, 213 F.3d 1269, 1285 (10th Cir.), *rev'd on other grounds*, 531 U.S. 1033, 121 S.Ct. 621, 148 L.Ed.2d 531 (2000). "A district court does not abuse its discretion so long as the charge as a whole adequately states the law." *United States v. Starnes*, 109 F.3d 648, 651 (10th Cir.) (internal quotations omitted), *cert. denied*, 521 U.S. 1128, 117 S.Ct. 2529, 138 L.Ed.2d 1029 (1997). To make this latter determination, we review de novo whether the charge as a whole "accurately informed the jury of the governing law." *United States v. Cerrato–Reyes*, 176 F.3d 1253, 1262 (10th Cir.1999).

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

1. At trial, Mr. Hardridge's counsel offered an alternate verdict form that would have permitted the jury to make specific findings as to the objects of the conspiracy only if it first found him guilty of the overall conspiracy.

Even if we find that the District Court erred, we must also determine whether the error is "harmless error." Fed.R.Crim.P. 52(a). The government bears the burden to show that a nonconstitutional error is harmless by a preponderance of the evidence. *United States v. Wittgenstein*, 163 F.3d 1164, 1169 (10th Cir.1998). An error "is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." *United States v. Cestnik*, 36 F.3d 904, 910 (10th Cir.1994).

### 2. Merits

Because the forms used by the District Court only required a finding as to the objects of the conspiracy, Mr. Hardridge argues, he was not found guilty of being a participant in a drug conspiracy. In response, the government claims that the verdict forms sufficiently informed the jury of the need to find Mr. Hardridge guilty of the overarching conspiracy not just its objects. The government also appears to contend that we should interpret the verdict form in light of the instructions given, although the government cites no case law to support this proposition. Understood in this light, the government argues, the verdict forms accurately informed the jury of the law.

Despite the government's protestations, we agree with Mr. Hardridge that the verdict forms never required the jury specifically to find him guilty of the overarching conspiracy.[2] Like Mr. Hardridge, we read the verdict forms to require a finding only as to objects of the conspiracy.

Although we harbor grave doubts about the propriety of the use of these verdict forms, we need not decide whether their use constitutes error or whether the jury instructions cured any possible error because, even if we found error, the use of the verdict forms did not substantially influence the outcome of the trial. *See United States v. Magleby*, 241 F.3d 1306, 1318 (10th Cir.2001) ("Notwithstanding our doubts regarding the relevance of this testimony, we need not decide whether the district court abused its discretion in admitting it because we find that it was harmless error."); *cf. Neder v. United States*, 527 U.S. 1, 15–16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (applying harmless error to jury instructions).

The government carries its burden to establish harmlessness by pointing to the testimony of two witnesses supporting the

---

2. The pertinent forms read:

Count 1—charges a drug conspiracy in violation of Title 21, United States Code[s][sic], Section 846. We, the Jury, in the above styled and numbered case do upon our oaths, unanimously find the defendant **Stephen Ramont Hardridge** as to Count 1, as follows:

Object 1—Knowingly and intentionally distribute and possess with intent to distribute a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1):

\_\_\_\_\_ Not Guilty \_\_X\_\_ Guilty

Object 2—Knowingly and intentionally distribute and possess with intent to distribute a mixture or substance containing a detectable amount of marijuana in violation of 21 U.S.C. § 841(a)(1)

\_\_X\_\_ Not Guilty \_\_\_\_\_ Guilty

Object 3—Knowingly and intentionally distribute and possess with intent to distribute a mixture or substance containing a detectable amount of cocaine base (crack cocaine) in violation of 21 U.S.C. § 841(a)(*l* )

\_\_\_\_\_ Not Guilty \_\_X\_\_Guilty

*As previously instructed, only if you find one or more of the defendants now on trial "guilty" of Count 1, will you proceed to make a determination regarding the amount of controlled substance attributed to each object of the conspiracy charged in the Second Superseding Indictment. If, on the other hand, you find all of the defendants now on trial "not guilty" of Count 1, then you need not consider Verdict Form6.*

finding of guilt on the conspiracy charge. First, drug-courier-turned-government-witness Jennifer Natale testified that, on four or five occasions, Mr. Hardridge picked up bags of cocaine that she had delivered to the home of another coconspirator. She also testified that Mr. Hardridge once returned six kilograms of cocaine that he had picked up from her because, as she explained, "the cocaine, when they cooked it, was a dark brown crumbly color." She further testified that Mr. Hardridge gave her $300 to cover her expenses so that she could remain in Tulsa while he and Mr. Bellamy decided what to do regarding the "bad" cocaine.

The government also points to the testimony of Netha Bell Taylor, Mr. Bellamy's aunt. Ms. Taylor testified that she transported drugs for Mr. Bellamy and allowed members of the conspiracy to store marijuana and cocaine at her home. Ms. Taylor also corroborated Ms. Natale's story regarding the "bad" cocaine and testified that he often picked up cocaine from her home, giving her large amounts of money in return.

In light of this substantial evidence regarding his involvement in the conspiracy, we hold that the use of the verdict forms did not substantially impact the outcome of the trial.[3]

## B. *Sentencing*

### 1. *Standard of Review*

Mr. Hardridge alleges four separate errors in sentencing. On sentencing appeals, we review the sentencing court's factual findings "for clear error and its legal conclusions de novo." *United States v. Shumway,* 112 F.3d 1413, 1426 (10th Cir.1997). We interpret the Sentencing

Guidelines "as if they were a statute," *United States v. Plotts,* 347 F.3d 873, 876 (10th Cir.2003) (quotations omitted), and the commentary to the Guidelines as "authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of" the Guidelines, *Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993).

Pursuant to clear error review, we "will not reverse a lower court's finding of fact simply because we would have decided the case differently. Rather, [we] ... ask whether, on the entire evidence, [we are] left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie,* 532 U.S. 234, 242, 121 S.Ct. 1452, 149 L.Ed.2d 430 (2001) (citations and internal quotations omitted). Moreover, at sentencing, "the court [i]s not required to find that the evidence [i]s overwhelming; it need[ ] only to be convinced by the preponderance of the evidence." *United States v. Ruiz–Gea,* 340 F.3d 1181, 1189 (10th Cir.2003).

Finally, "[w]e review the district court's imposition of a fine within the range set by the Sentencing Guidelines for abuse of discretion." *Wittgenstein,* 163 F.3d at 1173. Under this standard, "we will not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *United States v. Mitchell,* 113 F.3d 1528, 1531 (10th Cir.1997). We turn now to Mr. Hardridge's four sentencing claims.

### 2. *Type of Narcotics*

■ Mr. Hardridge argues that the District Court erred, pursuant to U.S. Sen-

---

**3.** To be clear, we do not approve of the District Court's use of the verdict forms at issue. Rather, we hold only that any resulting error

did not affect the outcome of the trial as required by Rule 52(a) of the Federal Rules of Criminal Procedure.

tencing Guidelines Manual § 2D1.1 (2002) ("U.S.S.G."), in "finding that the substance attributed to [him] was cocaine base [i.e., crack cocaine,] rather than cocaine hydrochloride." Specifically, he contends that we should discount the testimony of Ms. Natale because "she merely *assumed* that the powder had been cooked" and that "[s]he did not witness a cook, and no one told her about a cook." The government disagrees, urging that "Ms. Natale saw the cocaine powder and the cocaine base ... when [Mr.] Hardridge returned the six kilograms to her" and that "nothing in the trial transcript ... show[s] that the testimony of Ms. Natale [is] unreliable."

The District Court's conclusion on this score is a factual one, thus we review for clear error. *See United States v. Davis,* 182 F.3d 1201, 1202 (10th Cir.1999). One reasonable interpretation of Ms. Natale's testimony is that Mr. Hardridge discovered that the cocaine was "bad" because he had attempted to "cook" it. Although admittedly not a model of clarity, we cannot say that the District Court clearly erred by relying on Ms. Natale's testimony to conclude that Mr. Hardridge was responsible for crack cocaine. Thus, we affirm the District Court's decision to attribute crack cocaine to Mr. Hardridge.

### 3. *Quantity of Narcotics*

■ Mr. Hardridge next contends that the District Court erred in attributing to him 500 grams of crack cocaine, pursuant to U.S.S.G. § 2D1.1. As factual a determination, we review for clear error the District Court's decision to attribute an amount of narcotics to a defendant. *United States v. Topete–Plascencia,* 351 F.3d 454, 459 (10th Cir.2003).

Mr. Hardridge claims that "[b]ecause he was in custody during much of the ongoing conspiracy, [he] could not have been responsible for large amounts of drugs."

Pointing to the testimony of Ms. Natale regarding the attempt to cook six kilograms of "bad" cocaine, the government argues that—if anything—it was conservative for the District Court to attribute only 500 grams of crack cocaine to Mr. Hardridge.

As noted above, Ms. Natale testified that Mr. Hardridge attempted to "cook" six kilograms of powder cocaine. In light of this testimony, we cannot say that we are left with a "definite and firm conviction" that the District Court erred in attributing only 500 grams of crack cocaine to Mr. Hardridge. *Easley,* 532 U.S. at 242, 121 S.Ct. 1452.

### 4. *Obstruction of Justice*

■ Mr. Hardridge next claims that the District Court made a clearly erroneous finding of fact in enhancing his sentence under U.S.S.G. § 3C1.1 for obstructing justice. Section 3C1.1 of the Sentencing Guidelines provides that a district court must enhance the defendant's sentence by two levels if:

(A) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction and any relevant conduct; or (ii) a closely related offense .... U.S.S.G. § 3C1.1.

Application Note 4 to that section states that the enhancement applies if the defendant "threaten[s], intimidat[es], or otherwise unlawfully influenc[es] a co-defendant, witness, or juror, directly or indirectly, or attempt[s] to do so." U.S.S.G. § 3C1.1, Application Note 4(a).

Here, the District Court based its enhancement on the following facts. At trial,

Mr. Hardridge passed a note to his girlfriend, Valvetta Boyd. Pursuant to the note's instructions, Ms. Boyd discarded the note after reading it. In preparation for her testimony, the government asked her to reconstruct the note to the best of her memory. The reconstructed note read, "I know you and Rashonda are good friends. Tell her to tell her mother-in-law [i.e., Netha Beth Taylor] that they don't have ___ on us. They are trying to make a case. Put this letter in the trash."

Mr. Hardridge claims that the note merely stated, "in vulgar terms, that the government had no case against him." He points to various portions of Ms. Boyd's testimony to support this reading. In contrast, the government, pointing to Ms. Boyd's reconstruction of the note and her accompanying testimony, argues that the note was an attempt to discourage Ms. Taylor from testifying. Because the District Court's characterization of the note was essentially a factual finding, we review it for clear error. *Davis,* 182 F.3d at 1202.

As with the previous sentencing issues, the standard of review is outcome determinative here. After reviewing the record, we cannot say that the District Court clearly erred in characterizing the note as an attempt to influence Ms. Taylor. Although we note some discrepancy between Ms. Boyd's testimony and the reconstructed note, sufficient evidence exists to support the District Court's interpretation. First, the note, as reconstructed by Ms. Boyd, could plainly be read as an attempt to influence Ms. Taylor by asking Ms. Boyd to relay to Ms. Taylor the weakness of the government's case. Second, much of Ms. Boyd's testimony corroborates her reconstruction. Finally, evidence supports that the note instructed Ms. Boyd to throw it away after reading it, which the District Court could reasonably interpret as an effort to conceal the communication because of its illegal nature. For these reasons, we affirm the District Court's two-level obstruction-of-justice enhancement.

### 5. *Imposition of the Fine*

■ Mr. Hardridge next asserts that the District Court erred in imposing a $1000 fine. *See* U.S.S.G. § 5E1.2. He argues both that the District Court should have made specific findings to support the fine and that he cannot be reasonably expected to pay a fine. The government responds that the District Court had no duty to make specific factual findings and that Mr. Hardridge did not present any evidence to show he would be unable to earn money while in prison or during his supervised release.

As to Mr. Hardridge's specific-findings argument, U.S.S.G. § 5E1.2(d) does not require the District Court to make specific findings. Instead, the record need only reflect that the District Court considered several enumerated factors before imposing the fine. *United States v. Nez,* 945 F.2d 341, 343 (10th Cir.1991).

Mr. Hardridge bore the burden at sentencing of establishing his inability to pay the fine. *See* U.S.S.G. § 5E1.2(a). After hearing argument on whether to issue a fine, the District Court accepted the Pre-Sentence Report ("PSR"), including its recommended fine. The PSR indicated that Mr. Hardridge was thirty-two years old, in overall good health, had his GED, and was a skilled carpenter. It concluded that Mr. "Hardridge is facing a term of imprisonment that will allow him, while incarcerated and during his term of supervised release, to pay a guideline fine." Because the District Court considered both the argument and the contents of the PSR, it satisfied the requirements of U.S.S.G. § 5E1.2(d). As such, we cannot say that the District Court abused its dis-

cretion in imposing the fine. *See Wittgenstein*, 163 F.3d at 1173.

## C. *Trial Testimony Regarding the Note*

### 1. *Standard of Review*

■ Mr. Hardridge next urges that the District Court erred in allowing the government to admit testimony at trial regarding the note he passed to Ms. Boyd. Because Mr. Hardridge's trial counsel objected to the admission of Ms. Boyd's testimony before the District Court, we review its decision to admit the testimony for abuse of discretion. *United States v. Curtis*, 344 F.3d 1057, 1067 (10th Cir.2003). "In reviewing a court's determination for abuse of discretion, we will not disturb the determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *Mitchell*, 113 F.3d at 1531.

Even if we find that the District Court erred, we must also determine whether the error is "harmless error." Fed.R.Crim.P. 52(a). The government bears the burden to show that a nonconstitutional error is harmless by a preponderance of the evidence. *Wittgenstein*, 163 F.3d at 1169. An error "is harmless unless it had a 'substantial influence' on the outcome or leaves one in 'grave doubt' as to whether it had such effect." *Cestnik*, 36 F.3d at 910.

### 2. *Merits*

Mr. Hardridge argues that "[t]he evidence was clearly more prejudicial than probative" because it "was not relevant to any issue in the case" and "misle[d] the jury, and provide[d] a basis for conviction because the Defendant is a bad person, not on the issues of guilt or innocence of the charges leveled." The government responds that the note was an attempt to influence Ms. Taylor and, as such, was relevant as evidence of Mr. Hardridge's

guilty conscience regarding the underlying crimes. For the reasons stated in the verdict-forms section, we find that, even if the District Court erroneously admitted the testimony, the error was harmless. *See Magleby*, 241 F.3d at 1318. Thus, we affirm the District Court's decision to admit the testimony.

## D. *Disqualification of Counsel*

### 1. *Standard of Review*

■ Mr. Hardridge contests the District Court's order disqualifying his attorney. "We review attorney disqualification orders under a bifurcated standard of review. First, we review the district court's factual conclusions under a clear error standard. Second, we review the district court's legal interpretation of particular ethical norms under a de novo standard when that interpretation implicates important constitutional rights." *United States v. Bolden*, 353 F.3d 870, 878 (10th Cir. 2003) (internal citations omitted); *see also United States v. Collins*, 920 F.2d 619, 628 (10th Cir.1990) (holding disqualification orders affect a defendant's Sixth Amendment rights when they disqualify the defendant's "counsel of choice").

### 2. *Merits*

Mr. Hardridge retained attorney Jeff Fischer to defend him at trial. Mr. Fischer had previously defended one of Mr. Hardridge's codefendant's, Mr. Ray, in state court in a case in which the factual allegations mirrored portions of Mr. Hardridge's current federal prosecution. Mr. Ray moved the District Court to disqualify Mr. Fischer, arguing that his prior representation of Mr. Ray created "a serious potential for conflict." The District Court granted the motion.

Mr. Hardridge argues that the District Court improperly disqualified Mr. Fischer

because his representation of Mr. Hardridge would not have "threaten[ed] the integrity of the proceedings." Specifically, he argues that "no grounds for conflict existed" and that "any conflict was moot, if it existed at all, at the time of trial." The government claims that the District Court properly disqualified Mr. Fischer under Rules 1.7 and 1.9 of the Oklahoma Rules of Professional Conduct because the facts of this case "show that Mr. Fischer had a clear conflict of interest" and that "Mr. Ray refused to waive attorney-client privilege."

The United States District Court for the Northern District of Oklahoma has officially adopted the Oklahoma Rules of Professional Conduct.[4] Here, Oklahoma Rule of Professional Conduct Rule 1.9 provides the relevant rule.[5] Oklahoma Rule 1.9 tracks exactly the text of Rule 1.9 of the ABA Model Rules of Professional Conduct, which "we believe reflect[s] the national standard to be used in ruling on disqualification motions." *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir.1994).

Under Rule 1.9, a party seeking to disqualify opposing counsel must establish "(1) an actual attorney-client relationship existed between the moving party and the opposing counsel; (2) the present litigation involves a matter that is 'substantially related' to the subject of the movant's prior representation; and (3) the interests of the opposing counsel's present client are materially adverse to the movant."[6] *Cole*, 43 F.3d at 1383 (citing ABA Model Rule 1.9(a) & (c)). If the movant establishes the first two prongs, an irrebuttable "presumption arises that a client has indeed revealed

**4.** *See* N.D. Okla. R. 83.2 ("Attorneys practicing in this court are expected to conduct themselves in accordance with the Oklahoma Rules of Professional Conduct, as adopted by the Oklahoma Supreme Court, as the standard of conduct of all members of the Oklahoma Bar Association."); *see also* N.D. Okla. R. 83.4 (oath requiring an attorney to "solemnly swear" to "be bound by the Oklahoma Rules of Professional Conduct and [to] conduct [himself] in compliance therewith at all times.").

**5.** This rule reads:

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

(1) whose interests are materially adverse to that person; and

(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless

the former client consents after consultation.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has been generally known; or

(2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

**6.** Even though Mr. Fischer had previously represented one of Mr. Hardridge's codefendants, and was thus never technically "opposing counsel," the prohibitions of Rule 1.9 apply equally when the alleged conflict involves a codefendant. *See* Model R. Prof'l Conduct R. 1.9 (not limiting the Rule to opposing counsel); *Cf. Moss v. United States*, 323 F.3d 445, 459 (6th Cir.2003) (noting that an impermissible conflict of interest can occur in the Sixth Amendment context "when an attorney representing a defendant has previously represented co-defendants."), *cert. denied*, —— U.S. ——, 124 S.Ct. 303, 157 L.Ed.2d 144 (2003).

facts to the attorney that require his disqualification." *Smith v. Whatcott,* 757 F.2d 1098, 1100 (10th Cir.1985).

Here, there undoubtedly was an attorney-client relationship between Mr. Fischer and Mr. Ray. Second, we agree with the District Court's conclusion that the prior representation is "substantially related" to this prosecution because "the factual contexts of the two representations are similar or related." *Id.* Mr. Hardridge does not contest this conclusion. The District Court was therefore correct to disqualify Mr. Fischer in this case. *Id.*

### E. *Speedy Trial Act*

#### 1. *Standard of Review*

■ Finally, Mr. Hardridge argues that the District Court erred in concluding that the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.,* does not apply to an information filed pursuant to 21 U.S.C. § 851(a)(1). We review the District Court's interpretation of this statute de novo. *United States v. Alahmad,* 211 F.3d 538, 541 (10th Cir. 2000).

#### 2. *Merits*

On April 30, 2002, the government filed an information pursuant to § 851(a)(1), notifying Mr. Hardridge of its intent to use his prior felony convictions to enhance any sentence resulting from the current prosecution. On July 11, 2002, Mr. Hardridge filed a motion to dismiss this information, claiming that the Speedy Trial Act required the government to commence trial against him on the § 851(a)(1) information within seventy days of its filing. The District Court denied his motion, finding that the "plain language" of the "Speedy Trial Act only applies to informations and indictments which charge 'the commission of an offense.'"

For the reasons provided in a companion case, we affirm the District Court's Speedy Trial Act ruling. *See United States v. Vaughn,* 370 F.3d 1049 (10th Cir.2004).

### III. CONCLUSION

For the reasons stated above, we AFFIRM the District Court's judgment in full.

**VERDICT FORM –3**

*STEPHEN RAMONT HARDRIDGE*

**COUNT I**

**VERDICT FORM –6**

**COUNT 1–DRUG CONSPIRACY**

*QUANTITY OF CONTROLLED SUBSTANCE*