**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 30, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

STEPHEN RAMONT HARDRIDGE,

Defendant - Appellant.

No. 02-5208
(D. Ct. No. 00-CR-126-C)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Chief Circuit Judge, **EBEL**, and **HARTZ**, Circuit Judges.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

A jury found Defendant-Appellant Stephen Ramont Hardridge guilty of conspiring to possess and distribute narcotics. The District Court sentenced Mr. Hardridge to 292 months' incarceration to be followed by ten years' supervised

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

release and imposed $10,100 in assessments and fines. We affirmed. *See United States v. Hardridge*, 100 Fed. Appx. 743 (10th Cir. June 7, 2004) (unpublished) ("*Hardridge I*"). The Supreme Court summarily reversed and remanded our decision in light of *United States v. Booker*, 543 U.S. —, 125 S. Ct. 738 (2005). *See Hardridge v. United States*, — U.S. —, 125 S.Ct. 1020 (Jan. 24, 2005). We GRANT Mr. Hardridge's motion to file a supplemental reply brief, REINSTATE all non-sentencing portions of our previous opinion, as well as our previous discussion of the imposition of fines, and upon reconsideration AFFIRM Mr. Hardridge's sentence.

## I. BACKGROUND

The Government prosecuted Mr. Hardridge for being a member of an extensive drug conspiracy. The government presented evidence at trial showing that the central player in the conspiracy was Darrell Bellamy of Phoenix, Arizona. From Phoenix, Mr. Bellamy coordinated shipments of powder cocaine, crack cocaine, and marijuana to various cities, including Tulsa, Oklahoma; Wichita, Kansas; and Detroit, Michigan. The government asserts that Mr. Hardridge was a member of this conspiracy. A federal grand jury indicted Mr. Hardridge for conspiring to possess and distribute cocaine, crack cocaine, and marijuana in violation of 21 U.S.C. § 846. After a twenty-three-day trial involving over fifty witnesses, a jury convicted Mr. Hardridge on all counts.

In *Hardridge I*, Mr. Hardridge brought challenges to both his conviction and his sentence. On remand from the Supreme Court he once again challenges both his conviction and his sentence. The Supreme Court, however, remanded to us only "for further consideration in light of *Booker v. United States*." *Hardridge* 125 S.Ct. at 1020. As we find nothing in *Booker* that calls Mr. Hardridge's conviction into question, we limit our review on remand to the sentence and reinstate all non-sentencing portions of our previous opinion.

## II. DISCUSSION

In the District Court and in *Hardridge I*, Mr. Hardridge challenged the District Court's findings as to the type and amount of narcotics he trafficked and the factual basis for an obstruction of justice enhancement under U.S. Sentencing Guidelines Manual § 3C1.1 (2001) ("U.S.S.G.").[1] In *Hardridge I*, we reviewed these factual findings for clear error, *see United States v. Shumway*, 112 F.3d 1413, 1426 (10th Cir. 1997), and held that these findings were supported by the record. *Booker* does not cause us to reconsider this issue. *See United States v. Doe*, 398 F.3d 1254, 1257 & n.5 (10th Cir. 2005) (holding post-*Booker* that "[w]hen reviewing a district court's application of the Sentencing Guidelines,. . . we review any factual findings for clear error."). As such, we re-adopt our

---

[1]In *Hardridge I*, Mr. Hardridge also challenged the propriety of the fines the District Court imposed. He does not contest the imposition of these fines on remand. As such, we reinstate our previous opinion in this regard.

previous holding that, based on the record, the District Court did not clearly err in finding that Mr. Hardridge trafficked 500 grams of crack cocaine and that, during trial, he passed a note to a witness in an attempt to influence her testimony and therefore obstruct justice. As such, we affirm our holding that the District Court did not err in determining Mr. Hardridge's sentence under the Guidelines.

**A.**

Of course, post-*Booker*, this does not end our analysis. In *Booker*, the Court "reaffirm[ed its] holding in *Apprendi*: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker*, 125 S.Ct. at 756. "As a result, the Court held that mandatory application of the Guidelines violates the Sixth Amendment when judge-found facts, other than those of prior convictions, are employed to enhance a sentence." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir. 2005) (en banc). To remedy this error the Court "severed two provisions of the Sentencing Reform Act of 1984, . . . [n]amely, . . . 18 U.S.C. § 3553(b)(1), which made the imposition of a Guidelines sentence mandatory in the vast majority of cases, and those portions of 18 U.S.C. § 3742(e) that established standards of review on appeal." *Id*. "Henceforth, courts are still required to consider the Guidelines in determining

sentences, but they are not required to impose a sentence within the Guidelines range." *Id*.

Here, based upon the drug-type, drug-amount, and obstruction-of-justice enhancements, the District Court determined that Mr. Hardridge had an offense level of 38 and a criminal history category of III. A mandatory application of the Guidelines produced a sentencing range of 292–365 months' incarceration; the court sentenced him to 292 months. *See* U.S.S.G. Ch.5, Pt. A. Without the quantity of narcotics, type of narcotics, and U.S.S.G. § 3C1.1 enhancements, Mr. Hardridge would have had an offense level of 32, resulting in a 151–188 month sentencing range. *See id.* Mr. Hardridge, however, was subject to a 240-month minimum sentence due to his previous drug-trafficking conviction. *See* 21 U.S.C. § 841(b)(1)(A) ("If any person commits [a § 841(b)(1)(A)(i)–(viii)] violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years"). Thus, on remand, Mr. Hardridge asserts that the District Court violated his Sixth Amendment rights when it applied the Guidelines in a mandatory fashion and made factual findings (other than the fact of prior convictions), which resulted in the imposition of a sentence 52 months above the maximum that would apply in the absence of such findings. *See Gonzalez-Huerta*, 403 F.3d at 731 (describing scenarios such as this as "constitutional *Booker* error").

**B.**

Mr. Hardridge fails, however, to address the threshold question of whether we review for plain error, because the *Booker* issue was waived below, or for harmless error, because the issue was preserved. *Compare* Fed. R. Crim. P. 52(a) *with* Fed. R. Crim. P. 52(b). Apparently, Mr. Hardridge believes he preserved his *Booker* challenge, and thus we review for harmless error, as he relies heavily on *United States v. Labastida-Segura*, 396 F.3d 1140 (10th Cir. 2005)—a case involving harmless error. The Government contends, and we agree, that Mr. Hardridge did not make this argument in the District Court because Mr. Hardridge only argued that there was insufficient evidence to support the court's factual findings. We recently held that this sufficiency-of-the-evidence argument does not preserve a constitutional *Booker* challenge on appeal. *United States v. Dazey*, 403 F.3d 1147, 1173–74 (10th Cir. 2005). Thus, we review only for plain error. *Id.* at 1174.

"Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Gonzalez-Huerta*, 403 F.3d at 732 (quotation marks omitted). Because we face constitutional *Booker* error here, we apply this test less rigidly than in the non-constitutional context. *Dazey*, 403 F.3d at 1174. There can be no doubt that Mr. Hardridge's 292-month

-6-

sentence, in light of *Booker*, was erroneously imposed and plainly so. *See id.* at 1174–75. Nonetheless, we cannot remand for resentencing unless Mr. Hardridge can meet his burden to satisfy both the third and fourth prongs of plain-error review as well. *Id*. at 1174–75, 1178.

## C.

On remand, Mr. Hardridge does not specifically address either the third or fourth prongs of plain-error review. The closest Mr. Hardridge comes to addressing these issues is his assertion, unsupported by the record or law, that "[t]he Trial Court would have probably gone lower, had it not been working under a mandatory system." We construe this as an argument that Mr. Hardridge's substantial rights were affected. Mr. Hardridge's unsupported intuitions, however, are not sufficient to satisfy the third prong of plain-error review. *See Romano v. Oklahoma*, 512 U.S. 1, 14 (1994) (holding in a capital case that the defendant could not demonstrate that substantial rights were affected when that "conclusion necessarily rests upon one's intuition."); *Gonzalez-Huerta*, 403 F.3d at 740–41 (Tacha, C.J., concurring). Mr. Hardridge, then, has failed to convince this Court to correct the sentencing error.

## D.

To assure thorough post-*Booker* review of this case on remand, we have independently reviewed the record in an attempt to fashion an argument on Mr.

Hardridge's behalf supporting resentencing. Having done this review, we find no grounds for resentencing because Mr. Hardridge cannot meet either the third or fourth prong of plain error review.

To satisfy the third prong of plain-error review, Mr. Hardridge "bears the burden to establish by a reasonable probability based upon the record on appeal that his substantial rights were affected by the District Court's [finding of facts and] mandatory application of the Guidelines." *Id.* at 736. As we outlined recently in *Dazey*, there are at least two ways to show that one's substantial rights are affected in a constitutional *Booker* error case. 403 F.3d at 1175.

"First, if the defendant shows a reasonable probability that a jury applying a reasonable doubt standard would not have found the same material facts that a judge found by a preponderance of the evidence, then the defendant successfully demonstrates that the error below affected his substantial rights." *Id.* To conduct this inquiry, the court of appeals reviews the evidence submitted at the sentencing hearing and the bases for objections the defendant made to the facts on which the sentence was predicated. *Id.* In *Dazey*, the defendant met this standard by "strenuously contest[ing] the factual basis for the sentencing enhancements [by] presenting [countervailing] evidence" that allowed us to "conclude [that] there is a reasonable probability that a jury evaluating the evidence presented at trial would not determine, beyond a reasonable doubt," that the factual predicate for

the sentencing enhancements were proven. *Id*. at 1177.

Here, we face a very different scenario. While the Government relied upon trial testimony to establish that Mr. Hardridge trafficked 500 grams of crack cocaine, Mr. Hardridge offered no countervailing evidence at trial or sentencing. Ms. Natale, a government trial witness, testified as follows. After delivering six kilograms of cocaine powder to Mr. Hardridge and others in the conspiracy, she was instructed to return it because it was "bad" (i.e., brown and crumbly). She testified that the cocaine was bad because "when they cooked it [i.e., transformed the powder cocaine to crack cocaine], [it] was a dark brown crumbly color." She further testified that she "saw the cocaine powder and the cocaine base [i.e., crack cocaine,] . . . when [Mr.] Hardridge returned the six kilograms to her." Mr. Hardridge argues that the testimony of Ms. Natale should be discounted because "she merely assumed that the powder had been cooked [and thus turned into crack cocaine]" and that "[s]he did not witness a cook, and no one told her about a cook." Here, unlike *Dazey*, all we have is an attempt to discredit a witness. *Cf.* 403 F.3d at 1177. Mr. Hardridge presented no countervailing evidence whatsoever in response to Ms. Natale's testimony. As such, we cannot "conclude [that] there is a reasonable probability that a jury evaluating the evidence presented at trial would not determine, beyond a reasonable doubt," that Mr. Hardridge cooked the powder cocaine to create 500 grams of cocaine base. *Id*.

We face a similar issue with the obstruction of justice enhancement. This enhancement was based upon the following facts. At trial, Mr. Hardridge passed a note to his girlfriend, Valvetta Boyd, who was present in the courtroom. Pursuant to the note's instructions, Ms. Boyd discarded the note after reading it. In preparation for her testimony, the government asked her to reconstruct the note to the best of her memory. The reconstructed note read, "I know you and Rashonda are good friends. Tell her to tell her mother-in-law [i.e., Netha Beth Taylor, who was to be called as a witness the next day,] that they don't have shit on us. They are trying to make a case. Put this letter in the trash." Mr. Hardridge claims that the note merely stated, "in vulgar terms, that the government had no case against him." In contrast, the Government, pointing to Ms. Boyd's reconstruction of the note and her accompanying testimony, argues that the note was an attempt to discourage Ms. Taylor from testifying. Again, unlike *Dazey*, all we have is an attempt to put a spin on what is otherwise clear and conclusive testimony. *Cf.* 403 F.3d at 1177. As such, we cannot "conclude [that] there is a reasonable probability that a jury evaluating the evidence presented at trial would not determine, beyond a reasonable doubt," that Mr. Hardridge attempted to influence a witness. *Id*.

The second way "a defendant may show that the district court's error affected his substantial rights [is] by demonstrating a reasonable probability that,

-10-

under the specific facts of his case as analyzed under the sentencing factors of 18 U.S.C. § 3553(a), the district court judge would reasonably impose a sentence outside the Guidelines range." *Id.* at 1175 (note omited). This may be demonstrated when the district court states that the defendant's conduct, based on this particular record, did not warrant the minimum Guidelines sentence. *Id.* In this case, the District Court did not make any such statement. Thus, we conclude that Mr. Hardridge's substantial rights were not affected.

## E.

Even if Mr. Hardridge could show that his substantial rights were affected, he cannot show that the integrity of the judiciary would be harmed by affirming his sentence; thus, he is not entitled to resentencing. "In the context of an alleged constitutional error, the relaxed [plain-error] standard means we do not require the exceptional showing required to remand a case of non-constitutional error. Nevertheless, the defendant still bears the burden of showing that an exercise of our discretion is appropriate." *Id.* at 1178.

In the constitutional *Booker* error context, "[e]vidence that would tend to support an exercise of our discretion under this standard . . . include[s]: (a) a sentence increased substantially based on a *Booker* error; (b) a showing that the district court would likely impose a significantly lighter sentence on remand; (c) a substantial lack of evidence to support the entire sentence the Guidelines required

the district court to impose; (d) a showing that objective consideration of the § 3553(a) factors warrants a departure from the sentence suggested by the Guidelines; or (e) other evidence peculiar to the defendant that demonstrates a complete breakdown in the sentencing process." *United States v. Dowlin*, — F.3d — 2005 WL 1155882 at *18 (10th Cir. 2005) (internal citations omitted). These factors do not favor resentencing in this case because we find Mr. Hardridge's appeal nearly indistinguishable from our recent *United States v. Magallanez* opinion. — F.3d. —, 2005 WL 1155913 (10th Cir. 2005).

In *Magallanez*, the defendant, like Mr. Hardridge, was convicted of participation in a drug trafficking conspiracy. *Id*. at *1. The district court in *Magallanez*, as here, made factual findings as to the amount of methamphetamine that the defendant trafficked that resulted in an enhancement of his sentence in violation of the Sixth Amendment. *Id*. at *9. Nonetheless, we determined that the defendant failed to establish that this error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id*.

We provided the following reasons in *Magallanez*. First, the defendant's "sentence is within the national norm and there is no record evidence to support a lower sentence." *Id*. We face the same situation here. The District Court sentenced Mr. Hardridge to the Guidelines sentence, which represents the national norm. *See Gonzalez-Huerta*, 403 F.3d at 738–39. Further, Mr. Hardridge has

presented no countervailing evidence at the sentencing hearing or at trial to support a lower sentence. Rather, he merely attacks the credibility of the Government's witnesses.

Second, in *Magallanez*, we found that "the district court did not merely find the sentencing-enhancement facts by a preponderance of the evidence. The court expressly noted that those facts were proved 'beyond any doubt in my mind.'" 2005 WL 1155913 at *6. We have similar statements from the bench here. At sentencing when Mr. Hardridge objected to the finding that he trafficked in crack cocaine, the District Court concluded: "[C]ertainly I say that at the trial when I heard the testimony I was pretty much convinced, and I don't think anybody questioned the fact that there was an attempt to cook, and that that's how they discovered the cocaine was bad . . . . [That is to say] it was to be converted into crack cocaine." The District Court made similar statements when Mr. Hardridge objected to the court's finding as to the amount of crack cocaine. After hearing Mr. Hardridge's objection, the court inquired if counsel had "some testimony or evidence you want to put on" to substantiate the objection. Counsel replied, "No, Your Honor." The court responded: "Well, it seems to the Court that the half-kilo, in view of what was in hand at the time, and in view of what the evidence indicates that intent was, to convert this, a half a kilo is a very, very conservative estimate." Moreover, the court indicated that it "thought [a finding of only 500

-13-

grams] was quite low." As we found in *Magallanez*, these statements in this case "strongly suggest[] that even with greater latitude, post-*Booker*, to take the weight of the evidence in support of sentencing enhancements into account, the court would reach the same conclusion regarding drug quantity." *Id.* at *9.

Furthermore, the District Court made similar comments about its degree of certainty in its findings regarding the obstruction of justice enhancement. After considering Mr. Hardridge's objection to the purpose of the note the judge stated: "[T]he Court felt that it was certainly - - there wasn't any other reason for that communication to be given. There was only one reason, only one logical reason, for having it worded the way it was, and that was to influence a prospective witness." As we concluded in *Magallanez*:

> In light of the district court's high degree of confidence in its finding of drug quantity [and the intent behind the note to Ms. Boyd], the lack of any basis in the record to doubt the accuracy of the court's calculations, and the absence of any reason to think the Guidelines range produced an inappropriate sentence under the facts of this case, a remand would be an exercise in futility.

*Id.* at *10. Thus, we conclude that Mr. Hardridge cannot establish that affirming his sentence would seriously affect the fairness, integrity, or public reputation of judicial proceedings. *See also United States v. Duncan*, 400 F.3d 1297 (11th Cir. 2005) (holding that the district court's constitutional *Booker* error did not rise to level of plain error, when it relied on judge-determined fact that cocaine powder had been converted into crack cocaine in order to set drug defendant's base

offense level higher than it would have been set using only the jury's special verdict).

### III.  CONCLUSION

On remand from the Supreme Court in light of *Booker*, we do not revisit our previous opinion affirming Mr. Hardridge's conviction.  Further, on plain-error review, we cannot reverse Mr. Hardridge's 292-month sentence.  Therefore, we GRANT Mr. Hardridge's motion to file a supplemental reply brief, REINSTATE all non-sentencing portions of our previous opinion, as well as our previous discussion of the imposition of fines, and upon reconsideration in light of *Booker* AFFIRM Mr. Hardridge's sentence.

Ebel, J. concurs in the result.


                                        ENTERED FOR THE COURT,



                                        Deanell Reece Tacha
                                        Chief Circuit Judge

-15-